**PEANUT CORPORATION OF AMERI-CA, International Marketing Associates, Inc., Respondents,**

v.

**HOLLYWOOD BRANDS, INC., Consolidated Foods Corporation, Petitioners.**

No. 82–1574.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1982.

Decided Dec. 15, 1982.

Robert C. Wood, III, Lynchburg, Va. (Bernard C. Baldwin, Jr., Edmunds, Williams, Robertson, Sackett, Baldwin & Graves, Lynchburg, Va., on brief), for petitioners.

S.J. Thompson, Jr., Lynchburg, Va. (Gregory P. Cochran, Caskie, Frost, Hobbs, Thompson, Knakal & Alford, Lynchburg, Va., on brief), for respondents.

Before WIDENER, HALL and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

The appeal raises questions concerning the scope and constitutionality of Virginia's long-arm statute. *Va.Code* § 8.01–328.1 *et seq.* The district court, in a diversity case, had denied the motion of Hollywood Brands, Inc. ("Hollywood") to dismiss for lack of *in personam* jurisdiction. The district court found, however, that there was substantial ground for difference of opinion upon the issue and that an immediate appeal from its order might materially advance the ultimate termination of the litigation. Thereupon, pursuant to FRAP 5, we granted Hollywood's petition for an interlocutory appeal.

## I.

### RELEVANT FACTS

Hollywood is an Illinois corporation that manufactures and distributes peanut-filled candy bars. Hollywood solicits business throughout Virginia through the use of manufacturers' representatives. Although Hollywood uses brokers in Virginia to sell its product, customers are invoiced directly by Hollywood. In marketing its product in Virginia, Hollywood uses numerous advertising methods. Substantial revenues are derived from sales in Virginia. Hollywood purchases a significant portion of its peanuts, one of its essential ingredients, from Virginia corporations.

In January, 1980, Hollywood experienced a fire in which its peanut processing operation was destroyed. Hollywood then set up an interim operation for peanut processing, contracting with outside concerns for its peanut supply. Hugh Parnell, owner of Peanut Corporation of America ("PCA") and International Marketing Associates, Inc. ("IMA") conducted a peanut processing business from his residence in Lynchburg, Virginia; PCA and IMA maintained warehouses in Texas. In late 1980, Parnell contacted Hollywood to inquire whether it would be interested in purchasing some peanuts. Subsequently, Hollywood sent two purchase orders to IMA at an address

in Virginia. The second purchase order, a modification letter, served as the basis for the contract. The actual contract was finally made between the parties by a third purchase order which varied slightly the terms of the second purchase order. The third purchase order was sent from Illinois to Texas. By an addendum to the third purchase order, PCA assigned all its rights under the contract to North Carolina National Bank.

Differences of opinion arose as to Hollywood's expected performance under the contract. Hollywood and IMA sent correspondence between Illinois and Virginia attempting to rectify the situation.

After accepting a large quantity of peanuts, Hollywood considered its obligation to the North Carolina National Bank satisfied. Hollywood thereafter sent a letter to IMA in Virginia advising IMA that it had fulfilled its commitment under the contract. The balance of the order was cancelled by means of a change order which was sent to PCA in Texas. The North Carolina National Bank reassigned all its rights to IMA.

IMA and PCA then sued Hollywood for breach of the contract.

## II.

### THE TWO STEP INQUIRY

When jurisdiction is sought pursuant to a long-arm statute, a dual analysis is normally required: first, it must be determined whether the statutory language, as a matter of construction, purports to assert personal jurisdiction over a defendant; and second, assuming that the answer to the first question is affirmative, it must be determined whether the statutory assertion of personal jurisdiction is consonant with the Due Process Clause of the United States Constitution. *Haynes v. James H. Carr, Inc.,* 427 F.2d 700, 703 (4th Cir.1970). The two inquiries may be interrelated, however. The Virginia long-arm statute, as in the case of other state statutes as well,[1] has been construed to extend *in personam* jurisdiction to the outmost perimeters of due

process. *See Kolbe, Inc. v. Chromodern Chair Co., Inc.,* 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971) ("It is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause."); *Carmichael v. Snyder,* 209 Va. 451, 456, 164 S.E.2d 703, 707 (1968) ("Admittedly, Chapter 4.1, Title 8 of the Code is a deliberate and conscious effort on the part of the General Assembly of Virginia to assert jurisdiction over nonresident defendants to the extent permissible by the Due Process Clause.").

Counsel for Hollywood conceded at oral argument that the statute could be applied constitutionally to confer jurisdiction and restricted argument to the proposition that, while Virginia could have written the statute in such a way as constitutionally to subject Hollywood to the jurisdiction of its courts, the Commonwealth has, nevertheless, not, in point of fact, done so. While that position is difficult to reconcile with the announced rule of Virginia jurisprudence that the words "transacting any business in this Commonwealth" reach "to the extent permissible under the due process clause," that legal proposition has not been tested in a context quite like the one presented here. We, therefore, from an abundance of caution, proceed to the customary two step analysis.

### A. *The Statutory Scheme*

The Virginia long-arm statute, *Va.Code* § 8.01–328.1, provides in pertinent part:

A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth;

\*      \*      \*      \*      \*      \*

Paragraph (1) of the statute extends the court's personal jurisdiction to encompass all nonresidents who transact *any business*

---

1. *E.g., Geelhoed v. Jensen,* 277 Md. 220, 352      A.2d 818 (1976).

within Virginia so long as the cause of action asserted arises from the nonresident's transaction of business. One act of transacting business will suffice. *Kolbe, Inc. v. Chromodern Chair Co., supra.*

■ Although Hollywood argues that it had no contacts with Virginia concerning the disputed contract, the modification letter, which became a part of the basic contract was addressed to and received by IMA in Virginia, telephonic negotiations occurred with one of the participants located in Virginia, and numerous written communiques between the parties were sent to and received in Virginia. There was sufficient "contracting" in Virginia to amount to the transaction of business from which the cause of action arose. *See I.T. Sales Inc. v. Dry,* 222 Va. 6, 278 S.E.2d 789 (1981) (long-arm jurisdiction obtained where contract had been executed in Virginia but substantially all the performance of the contract's terms took place out-of-state); *Kolbe, Inc. v. Chromodern Chair Co., supra* (long-arm jurisdiction upheld where a foreign corporation secured a written purchase order from the plaintiff in Virginia). *See also General Electric Co. v. Rose Int'l, Inc.,* 475 F.Supp. 602 (W.D.Va.1979). Plaintiffs' cause of action was a direct result of Hollywood's transaction of business within Virginia, and so the requirement that the cause of action arose from the transacting of the business was clearly satisfied.[2]

## B. *Due Process Considerations*

■ The Due Process Clause serves as a limitation on state assertions of jurisdiction and its scope should normally be investigated if a state's statute is construed to confer long-arm jurisdiction.[3] The parameters of the due process inquiry are well-settled. Where the person over whom jurisdiction is asserted has established "certain minimum contacts" with the forum such that requiring him to defend his interests in

the forum would not "offend 'traditional notions of fair play and substantial justice,'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and where he has "purposely avail[ed] [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), jurisdiction will be upheld. Each assertion of jurisdiction is to be tested on a case by case basis. *Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

■ Hollywood solicits business throughout the state of Virginia using manufacturers' representatives as well as numerous forms of advertising. Virginia customers are billed directly by Hollywood. Products are distributed to two "break-down" points in Virginia. Hollywood contacts Virginia peanut concerns with regularity. Such solicitation of business within a forum state is sufficient to subject a foreign corporation to suit within that State. *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1960); *Westcott-Alexander, Inc. v. Dailey,* 264 F.2d 853 (4th Cir.1959).

Hollywood contends that, because it was not "doing business" in Virginia in such a manner as to necessitate procurement of a certificate of authority from the State Corporation Commission under *Va.Code* § 13.-1–102, it has insufficient "minimum contact" with Virginia to permit *in personam* jurisdiction. Fourth Circuit precedent requires that we reject as inapposite such a contention. *See Westcott-Alexander, Inc. v. Dailey, supra,* 264 F.2d at 857, 860.

Hollywood admittedly has sufficient contact with Virginia to satisfy due process and thus to permit the extension of jurisdiction under the Virginia long-arm statute.

AFFIRMED.

---

**2.** Accordingly, we have no occasion to inquire as to whether, and, if so, to what extent the requirement may have been relaxed by the decision in *Kolbe, Inc. v. Chromodern Chair Co., supra.*

**3.** For the purposes of argument, we proceed on the assumption that counsel's apparent concession at oral argument that due process requirements were sufficiently met derived from a misunderstanding.