EASTERN SCIENTIFIC MARKETING,
INC., Plaintiff,

v.

TEKNA–SEAL, INC. Defendant.

Civ. A. No. 88–731–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 30, 1988.

Bernard R. Corbett, Law Office of Bernard R. Corbett, Washington, D.C., for plaintiff.

Amy T. Holt, McGuire, Woods, Battle & Boothe, Alexandria, Va., for defendant.

## ORDER

ELLIS, District Judge.

This matter comes before the Court on defendant's motion to dismiss plaintiff's Complaint for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this action to the District of Minnesota.[1] The pertinent facts are undisputed and easily stated.

### I. Facts

On November 1, 1980, Tekna–Seal, Inc. (TSI), a corporation headquartered and incorporated in Minnesota, entered into a contract with Eastern Scientific Marketing, Inc. (ESM), a corporation headquartered and incorporated in Pennsylvania. Under the terms of that contract, ESM was to be TSI's sole sales representative for TSI's glass-to-metal seals and ceramic-to-metal seals in Delaware, and in certain portions of Pennsylvania and New Jersey. As such, ESM was entitled to a commission for all orders received and accepted within the ESM sales territory. (Defendant's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint For Lack of Jurisdiction and Improper Venue or, In the Alternative, To Transfer the Action to the District of Minnesota at 2 [hereinafter "TSI's Memorandum"]).

On July 31, 1981, ESM's sales territory was expanded by written contract to include the District of Columbia, New Jersey, Pennsylvania, Maryland, Delaware and Virginia. This contract expired after one year. Thereafter, the parties' relationship continued substantially unchanged under a verbal contract, with ESM remaining TSI's sole sales representative for the same states. TSI claims Minnesota law controls the contract.[2] On March 1, 1988, TSI sent a letter to ESM terminating the remaining oral agreement between the parties. TSI agreed, however, to honor sales by ESM for 30 days, until March 31, 1988. ESM subsequently sued TSI for (i) failure to pay to ESM all commissions earned prior to March 31, 1988, (ii) wrongful termination of the sales agency agreement, and (iii) breach of a duty to account for all sales for which ESM was due a commission.

ESM claims to have solicited customers and serviced TSI accounts in Virginia. Yet, TSI admits to only one such account in Virginia, namely Atlantic Research Corporation (ARC), a Virginia corporation. (TSI's Memorandum at 2). It is undisputed that ESM introduced TSI to ARC. (TSI's Memorandum at 3). It is also undisputed that ESM was the exclusive sales representative for the ARC account. (TSI's Memorandum at 2). TSI asserts, however, it knows of only one instance in which ESM

---

1. Defendant also moved to have this action dismissed or stayed until such time as plaintiff acquired a Certificate of Authority to transact business in Virginia pursuant to Va.Code Ann. § 13.1–758 (Supp.1988). The Court allowed plaintiff until August 29, 1988 to obtain the Certificate of Authority. Plaintiff complied and defendant's motion on this ground is, therefore, moot.

2. While the written contract contains a provision to this effect, it is an open question whether the superceding oral agreement was subject to the same provision. In any event, the Court's analysis assumes, *arguendo*, that Minnesota law applies.

contacted ARC about a potential order for TSI. (Affidavit of Steve Johnson ¶ 2). TSI admits to having information about only one visit to ARC by a TSI employee—a travel voucher containing the handwritten notation "P.M. ARC—Steve Ludeke." [3] (Third Affidavit of Harold Gonier ¶ 3 [hereinafter "Gonier 3"] ).[4] Attempting to avoid this voucher's import, TSI declares that it cannot confirm that the TSI employee actually visited ARC because there appears to be no corresponding trip report. *Id.* This is unpersuasive; the inference invited by the travel voucher outweighs the absence of a trip report. TSI admits to four visits by ARC representatives to TSI in Minnesota. (Gonier 3 ¶ 4). There is also clear evidence that on at least one occasion representatives of both TSI and ARC visited Environ Corporation, a D.C. testing company, concerning problems with test fixtures on TSI orders from ARC. (Gonier 3 attachment). TSI admits to total sales to ARC over the contract period of $122,896.09. (Gonier 3 ¶ 5). (ESM alleges that the sales by TSI to ARC totalled $458,750. (Supplemental Affidavit of Ernest C. Frank ¶ 5).) Finally, it is undisputed that on a number of occasions TSI has spoken via telephone with ARC representatives in Virginia, and that it has frequently sent letters, purchase orders, bills and price quotations to ARC in Virginia. (Plaintiff's Response to Order Dated August 15, 1988, Exhibits 1–6 [hereinafter "ESM's Response"] ).

TSI has no office, warehouses, employees, bank accounts, real property or telephone listings in Virginia. TSI regularly advertises its products in only one publication, *The Thomas Register*, which is available by subscription only. There is no evidence as to whether there are Virginia subscribers to *The Thomas Register*.

## II. *Personal Jurisdiction*

█ TSI asserts that this Court lacks personal jurisdiction. The undisputed facts, however, confirm its existence. To establish personal jurisdiction, two questions must be answered in the affirmative. First, does the language of Virginia's long-

arm statute reach TSI's conduct? If so, does the statutory assertion of personal jurisdiction comport with the Due Process Clause of the United States Constitution? *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982) (citing *Haynes v. James H. Carr, Inc.*, 427 F.2d 700, 703 (4th Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed. 2d 245 (1970)). ESM bears the burden of demonstrating jurisdiction once the existence of personal jurisdiction has been questioned. *Haynes*, 427 F.2d at 704.

The Virginia long-arm statute has been construed by the Virginia Supreme Court to extend *in personam* jurisdiction to the full extent of the Due Process Clause. *Kolbe, Inc. v. Chromodern Chair, Co.*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971) ("It is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause."); *Carmichael v. Snyder*, 209 Va. 451, 456, 164 S.E.2d 703, 707 (1968). That statute provides in pertinent part:

A. A court may exercise personal jurisdiction over a person directly or by agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth;

\*  \*  \*  \*  \*  \*

B. When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him; however, nothing contained in this chapter should limit, restrict or otherwise affect the jurisdiction over foreign corporations which are subject to service or process pursuant to the provisions of any other statute.

Va.Code Ann. § 8.01–328.1 (Supp.1988).

█ TSI's activities plainly fall within the ambit of the statute; it has transacted business in Virginia. TSI has, over a period of years, sold $120,000 worth of equip-

---

**3.** Steve Ludeke is an ARC employee.

**4.** Harold Gonier is President of TSI.

ment to ARC. TSI has also solicited business by telephone from this corporation, (Affidavit of William Morrissey ¶ 2),[5] and sent them a series of letters and bids. On at least one occasion a representative of TSI visited ARC in Virginia; on another occasion, TSI representatives visited a Washington, D.C. testing firm to check on a problem with the equipment that TSI sold to ARC. Clearly, these contacts are sufficient to establish that TSI transacted business in Virginia, particularly since only one business-related contact is required for jurisdictional purposes under the Virginia long arm statute. *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*, 218 Va. 533, 238 S.E.2d 800 (1977); *Peanut Corp. of America*, 696 F.2d at 313–14.[6]

TSI mistakenly relies on *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) as authority for interpreting the "transacting business" section of the Virginia long arm statute. (TSI's Memorandum at 5). *Burger King*, however, does not concern the interpretation of any long arm statute; rather, the decision considers only the constitutional question, namely "whether this exercise of long-arm jurisdiction offended traditional conception[s] of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment." *Id.*, 471 U.S. at 464, 105 S.Ct. at 2177. TSI also cites *Pennington v. McDonnell Douglas Corp.*, 576 F.Supp. 868, 872 (E.D.Va.1983) for the proposition that "solicitation of business without more is not doing business." (TSI's Memorandum at 6). Significantly, however, *Pennington* says more; it goes

on to explain that, "if a foreign corporation solicits business coupled with some other activity, jurisdiction will lie." *Id.* That is precisely what happened in this case. Seeking to avoid this conclusion, TSI asserts that it was ARC that solicited price quotes from TSI. (TSI's Memorandum at 3). ESM, however, has documented ample evidence of TSI soliciting bids from ARC. (ESM's Response, Exhibit's 1–6; Morrissey Affidavit ¶ 2). When these communications, solicitations and visits are combined with TSI's more than $122,000 in sales to ARC, TSI clearly transacted business in Virginia within the meaning of the long arm statute.

■ Under the Virginia long arm statute, the plaintiff must also show that "the cause of action arises from business transacted in Virginia; *i.e.*, ... the activities that support the jurisdictional claim coincide with those that form the basis of the ESM's substantive claim." *Furmanite America, Inc. v. Durango Associates*, 662 F.Supp. 348, 349 (E.D.Va.1986); Va.Code Ann. § 8.01–328.1(B). TSI argues that ESM's claims arise not out of the shipment of goods to TSI's Virginia clients, but, rather, out of the sales agreement entered into outside Virginia and governed by Minnesota law. (TSI's Memorandum at 7). This argument fails. In Count I, ESM seeks the payment of commissions earned under the sales agreement prior to cancellation by TSI. Specifically, these commissions arose from ESM's sales of goods to TSI clients in states, including Virginia, where ESM was sole sales representative. Moreover, it is undisputed that ESM was entitled to a com-

---

**5.** William Morrissey was one of TSI's founders and its first President.

**6.** TSI makes two additional arguments that miss the mark. First, TSI argues that because the relationship between ESM and TSI occurred primarily outside Virginia, TSI was not "transacting business" in Virginia. (TSI's Memorandum at 4–5). This argument is unpersuasive in determining whether TSI was "transacting business" in Virginia. Rather, the key to that analysis is the number of TSI's business contacts of all sorts with the forum. TSI's argument is relevant, if at all, only to the issue of "whether the cause of action arose from the act enumerated ... [under the long arm statute]." Va.Code Ann. § 8.01–328.1(B).

Second, TSI suggests that ESM must establish its own contacts with Virginia before personal jurisdiction may be asserted against TSI. (Defendant's Supplemental Memorandum in Support of Motion To Dismiss Plaintiff's Complaint For Lack of Jurisdiction And Improper Venue or, in the Alternative, To Transfer This Action To the District of Minnesota 6 [hereinafter "TSI's Supplemental Memorandum"] ). As a matter of law, however, ESM is not required to have "minimum contacts" with the forum state before that state may assert personal jurisdiction over a nonresident defendant. *Keeton v. Hustler Magazine*, 465 U.S. 770, 779, 104 S.Ct. 1473, 1480–81, 79 L.Ed.2d 790 (1984).

mission on TSI's sales to its Virginia customers whether or not ESM was responsible for generating the sales. TSI's sales to ARC are, therefore, directly related to ESM's claim in Count I. Counts II and III also have a Virginia nexus. Count II, for wrongful termination of the sales agency agreement, seeks damages for potential future sales in those states where ESM was sole sales representative, including Virginia. Count III seeks, *inter alia,* to recover the cost to ESM of establishing the amount of commissions owed by TSI. These commissions are directly related to TSI sales to ARC in Virginia. In sum, there is a sufficient relationship between TSI's transaction of business in Virginia and ESM's claims against TSI to satisfy the Virginia long arm statute.

█ Equally clear is the absence of any constitutional problem. The contacts between TSI and Virginia are quite sufficient to meet the requirements of the Due Process Clause. *Peanut Corp. of America* succinctly summarizes these requirements:

> Where the person over whom jurisdiction is asserted has established "certain minimum contacts" with the forum such that requiring him to defend his interests in the forum would not "offend traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and where he has "purposely avail[ed] [himself]" of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), jurisdiction will be upheld. Each assertion of jurisdiction is to be tested on a case by case basis.

696 F.2d at 314.

As the undisputed facts reflect, TSI has maintained a business relationship with a Virginia customer over a number of years. During this time TSI made substantial sales to its Virginia customer, and on at least one occasion a TSI representative visited this customer in Virginia. Additionally, there was substantial correspondence and telephone conversations between TSI and its customer. These activities plainly reflect the kind of purposeful activity necessary to establish sufficient minimum contacts to sustain jurisdiction over TSI. *See World-wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Supreme Court made clear in *Keeton v. Hustler Magazine,* 465 U.S. 770, 775–776, 104 S.Ct. 1473, 1478–79, 79 L.Ed.2d 790 (1984), that minimum contacts exist where, as here, a defendant purposefully directs its activities at residents of the forum state. If contacts between the party against which suit has been filed and the forum state are sufficient so that it is fair to make that party defend the suit in the forum state, the minimum contacts requirement is satisfied. In *Keeton,* plaintiff brought suit in New Hampshire against *Hustler* magazine for libel throughout the United States to take advantage of New Hampshire's six year statute of limitations. Although sales of *Hustler* in New Hampshire as a percentage of total United States *Hustler* sales were minute, the Supreme Court held they were sufficient to establish minimum contacts.[7]

In considering how interstate contractual obligations may give rise to personal jurisdiction, the Supreme Court has warned that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182 (quoting *Travelers Health Association v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). Such a continuing relationship with Virginia has been clearly established through the sale of products to ARC. Further, to the extent required by the Constitution, "specific jurisdiction" requirements

---

7. The Court recognizes that the facts in *Keeton* are not identical to the facts in this case. In *Keeton,* the law of the forum was to be applied. In this case, TSI alleges that Minnesota law applies. This factor, however, by itself, cannot defeat the existence of personal jurisdiction established through a pattern of transacting business.

have been met because the controversy arises out of TSI's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).[8]

In summary, ESM has established sufficient contacts between TSI and the state of Virginia to satisfy the requirements of the Due Process Clause. Because Virginia's long arm statute extends to the limits of that clause, and because its technical requirements have been met, the Court has personal jurisdiction over TSI.

### III. *Venue and Transfer*

TSI also contends that venue is improper in Virginia. It cites *Johnson Creative Arts, Inc. v. Wool Masters,* 743 F.2d 947 (1st Cir.1984) as authority for asserting that even if Due Process "minimum contacts" are satisfied, these contacts are not sufficient to satisfy the "doing business" venue requirement for suits against corporations.[9] Rather, TSI argues, the "doing business" requirement must, according to *Johnson,* be satisfied by meeting the requirements of the Commerce Clause. 743 F.2d at 954.[10]

█ *Johnson* is novel and intriguing. It is not, however, persuasive or controlling in this context. There is, in this case, an adequate basis for venue independent of the "doing business" clause of 28 U.S.C. § 1391(c).[11] The venue statute states that in diversity suits, venue is proper in any district "in which the claim arose." 28 U.S.C. § 1391(a). As established in the Virginia long arm statute discussion, all of ESM's claims arose in Virginia because that is where a large number of the sales in issue (according to ESM, nearly 50%) occurred. Accordingly, ESM's claims arose in Virginia, and venue is appropriate in this court.

The *Johnson* court did consider the issue of "arising under" venue. Its analysis, however, is factually inapposite. The *Johnson* court found that the small number of sales in Massachusetts as compared to total sales were not sufficient to confer venue under the "arising under" requirements of the venue statute. In *Johnson,* however, the cause of action was for national infringement of a patent. That is different from the claim here, which is based on a failure to provide commissions on TSI's Virginia sales. Additionally, in *Johnson,* Massachusetts sales were a comparatively small percentage of total sales of the allegedly infringing product. By contrast, Virginia sales here were a comparatively large percentage of total ESM representative district sales.

Many of the witnesses and much of the documentary evidence are located in Virgi-

---

**8.** The Supreme Court in *Helicopteros* acknowledges a distinction between cases relating to or arising out of the defendant's contacts with the forum in which personal jurisdiction is exercised, and suits not arising out of or relating to defendant's contacts with the forum in which personal jurisdiction is exercised. In the former, a court is said to be exercising "specific jurisdiction" over the defendant; in the latter, the court is said to be exercising "general jurisdiction" over the defendant. 466 U.S. at 414–16, 104 S.Ct. at 1872–73. Fewer contacts with the forum are required for "specific jurisdiction" than "general jurisdiction." In the present case, the Court exercises "specific jurisdiction" over TSI because TSI's contacts with the forum are directly related to ESM's cause of action.

**9.** The federal venue statute requires in pertinent part that

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

\* \* \* \* \* \*

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes. 28 U.S.C. § 1391(a) & (c).

**10.** *Johnson,* a federal question case, cannot be distinguished on that basis. The "doing business" requirement for corporate venue is applied to both diversity and federal question suits. *Johnson's* "doing business" requirement analysis, therefore, would extend to diversity suits.

**11.** Given this, the Court need not reach the merits of ESM's contention that the Fourth Circuit, in *Du–AL Corp. v. Rudolph Beaver, Inc.,* 540 F.2d 1230, 1233 (4th Cir.1976), rejected the *Johnson* analysis. (Plaintiff's Opposition to Defendant's Motion to Dismiss at 14).

nia, or within the subpoena range of the Eastern District. These facts rebut TSI's reliance on *Leroy v. Great Western United Corp.*, 443 U.S. 173, 184–185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979). In *Leroy*, the Supreme Court held that "a plaintiff may choose between those ... districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)—may be assigned as the locus of the claim." 443 U.S. at 185, 99 S.Ct. 2717. ESM has demonstrated that Virginia is a district at the locus of the claim and that Virginia is a district in which witnesses are available and evidence is accessible. Thus, the requirements of *Leroy*, with the exception of convenience to the TSI, are plainly met in Virginia. *See generally* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3806 (2d ed. 1976) and authorities cited therein (suggesting "weight of contacts" approach in determining proper venue). This Court, therefore, need not reach the "doing business" issue.

▇ TSI moves, in the alternative, for transfer of this suit to Minnesota pursuant to 28 U.S.C. § 1404(a). That provision provides, in pertinent part, that "(f)or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is settled that the moving party "has the burden of establishing whether there should be any change of forum ..., and Plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of Defendant." *Milliken & Co. v. F.T.C.*, 565 F.Supp. 511, 517 (D.S.C.1983) (citations omitted). To be sure, ESM, in this action, did not file suit in its home state of Pennsylvania. Even so, ESM's forum choice deserves some weight in the Section 1404 balance. A plaintiff

filing suit in a district where it is not a resident loses only some of the deference given its choice of venue. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) (quoting *Rodriguez v. Pan American Life Ins. Co.*, 311 F.2d 429, 434 (5th Cir.1962)) ("The plaintiff's statutory privilege of choosing his forum is a factor, held in varying degrees of esteem, to be weighed against other factors in determining the convenient forum. At the very least, the plaintiff's privilege of choosing his venue places the burden on the defendant to demonstrate why the forum should be changed. 'Plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed.' "). Moreover, ESM did file suit in Virginia where, in large part, the claim and many of the matters in controversy arose. *See Starnes v. McGuire*, 512 F.2d 918, 931 (D.C.Cir.1974) ("[W]here the incident in dispute is an act leading to revocation of parole, a forum near to the place at which those acts occurred will be better than the District of Columbia.").

▇ ESM further contends that if suit were filed in Pennsylvania, many necessary witnesses would be outside that court's subpoena power. Hence, these witnesses would appear at trial only by way of deposition. On the other hand, by filing suit in Alexandria, ESM is able to subpoena for trial important witnesses in Virginia, Maryland, Delaware and the District of Columbia, many of whom would otherwise escape compulsory process during trial. *See De-Lay & Daniels v. Allen M. Campbell Co., General Contractors*, 71 F.R.D. 368, 372–373 (D.S.C.1976) (subpoena power of Texas court over witnesses "compelling reason" to order transfer of suit); *see also Laws v. Spain*, 312 F.Supp. 315, 319 (E.D.Va.1970) (location where claims arose and of necessary witnesses reason for transfer). The subpoena power of the Court here strongly favors denying TSI's transfer motion.[12]

---

12. ESM also contends that filing in the Eastern District of Virginia insures a more expeditious resolution of the dispute. The Court disregards this factor. ESM has submitted no evidence that the trial docket in Minnesota is such that this case would be tried sooner in Virginia.

Prompt resolution of a case can be an important factor in the travel calculus. *See Fannin v. Jones,* 229 F.2d 368 (6th Cir.), *cert. denied,* 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956). In this instance, however, ESM's bare allegation is not a sufficient basis to call this factor into play.

TSI's transfer arguments are not compelling. Although it is certainly relevant that Minnesota substantive law may govern this case, *Bertnick v. Home Federal Savings and Loan,* 337 F.Supp. 968, 971 (W.D.Va.1972) (application of foreign state's law is a factor considered in ordering transfer), that factor is far from dispositive. Additionally, although TSI files and two TSI witnesses are in Minnesota, ESM has demonstrated that other necessary witnesses and files are located within the subpoena range of the Alexandria Division. These witnesses and files clearly would be outside the subpoena range of the District Court in Minnesota. Moreover, there is no indication that the pertinent TSI files are voluminous or otherwise difficult to bring to Virginia.[13]

At best, the transfer to Minnesota would merely shift the balance of inconvenience from the TSI to the ESM. *See Stinnes Interoil Inc. v. Apex Oil Co.,* 604 F.Supp. 978, 983–984 (S.D.N.Y.1985). In *Stinnes Interoil,* a New Jersey corporation sued a Missouri corporation in New York. Although the Missouri Uniform Commercial Code applied, the court determined that there were no differences between the New York and Missouri Uniform Commercial Code's which would give Missouri courts a special legal expertise. As a transfer would merely shift the inconvenience during discovery from the defendant to plaintiff, the motion for transfer was denied. The *Stinnes* analysis seems equally applicable to this case. Here, too, a non-Virginia plaintiff sued a non-Virginia defendant in Virginia. The result is some inconvenience for both, and a transfer merely shifts the balance of inconvenience. More is required, however, to prevail on a motion for transfer. Neither Virginia nor Minnesota are perfect forums for this dispute. Virginia is, however, a forum with sufficient contacts with the parties and the cause of action to meet the requirements of jurisdiction and venue. TSI has not carried its burden of persuading the Court that transfer is required. TSI's motion is therefore denied.

The clerk is directed to send copies of this order to all counsel of record.

---

**13.** Among the factors courts have considered in determining whether transfer is appropriate are: (1) plaintiff's choice of forum; (2) relation of forum to cause of action; (3) accessibility of witnesses; (4) materiality of witness testimony; (5) availability of compulsory process; (6) convenience for counsel; (7) financial status of parties; (8) pendency of another action; (9) docket condition; (10) delay in filing motion; (11) availability of defense in one forum and not in the other; (12) possibility of unfair trial; (13) expectation of favorable results; (14) amount of potential recovery; (15) court's familiarity with applicable law; (16) uncertainty in transferer state's choice of law rules; (17) view of premises or other property; (18) distance between the transferer and transferee courts; (19) availability of documentary evidence; and (20) prior agreement as to venue. *See generally, Questions As To Convenience And Justice of Transfer Under Forum Non Conveniens Provisions of Judicial Code (28 U.S.C. § 1404(a)),* 1 A.L.R.Fed. 15 (and authorities cited therein). TSI failed to raise many of the relevant factors listed above in its motion to transfer.