## PRODUCTION GROUP INTERNATIONAL, INC. Plaintiff,

v.

## Michael GOLDMAN, Defendant.

### No. 1:04 CV 686.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 23, 2004.

---

Bart Fitzpatrick Higgins, Sopuch Arnett Higgins & Gauvert LLP, Chicago, IL, for Plaintiffs/Movants.

Elizabeth Ann Childers Smith, Pillsbury Winthrop LLP, McLean, VA, for Defendants/Respondents.

### MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this diversity breach of contract case are questions of personal jurisdiction, venue, and transfer of venue.

### I.[1]

Plaintiff Production Group International, Inc. is a Delaware corporation headquartered in Alexandria, Virginia, with over two dozen offices throughout the United States, including three in Florida. Plaintiff creates, produces, and manages promotional events for its corporate clients. Defendant Michael Goldman, a longtime Florida resident, worked in plaintiff's Orlando, Florida office as an event producer from May 1998 until March 2004.

---

1. The facts recited here are derived from the parties' pleadings, moving papers, and supporting affidavits, with conflicts resolved in favor of plaintiff as the non-movant. *See My-* *lan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993); *Precept Med. Prods. v. Klus,* 282 F.Supp.2d 381, 384 (W.D.N.C.2003).

The business relationship between the parties commenced in or around May 1998 with a series of recruiting meetings in Orlando. During the course of the meetings, defendant was interviewed by three of plaintiff's employees, two from plaintiff's Orlando office and one from its Virginia headquarters. As result of the meetings, plaintiff made defendant an offer of employment conditioned on defendant's signing a "Code of Conduct Agreement" prohibiting him from (1) "solicit[ing] or divert[ing]" any of plaintiff's clients for eighteen months after termination of employment, or (2) "divulg[ing]," at any time during employment or after termination, information related to plaintiff's business operations. The agreement was drafted in Virginia, but contained neither choice-of-law nor choice-of-forum clauses. Defendant received the agreement via U.S. mail at his home in Florida, where he signed and delivered it to his supervisor in Orlando. During the ensuing six-year period of employment, defendant communicated frequently with plaintiff's Virginia employees on business matters, and made three trips to plaintiff's Virginia headquarters for business meetings.

In late 2002 or early 2003, defendant, via teleconference and email, assisted some of plaintiff's Virginia-based employees ("the Virginia team") with the creation of a sales pitch for Red Bull GmbH ("Red Bull"), an Austrian energy-drink manufacturer with an American subsidiary headquartered in Santa Monica, California. As a result of the sales pitch, Red Bull hired plaintiff to produce and manage two promotional motorcycle racing events in 2003, the first in October in Dallas, Texas, and the second in November in Las Vegas, Nevada. From his Florida office, defendant served as the executive producer of both events.

In late 2003 or early 2004, defendant—again, through electronic means of communication—helped the Virginia team plan a series of similar events for Red Bull to take place in the summer of 2004. In March 2004, however, defendant resigned his employment with plaintiff and began working for MJM Creative Services ("MJM"), a Florida-based competitor of plaintiff's, where he allegedly used the plans he helped plaintiff's Virginia team generate to solicit and divert Red Bull's patronage from plaintiff to MJM.

In June 2004, plaintiff filed this diversity action for breach of the Code of Conduct Agreement's non-solicitation and confidentiality clauses. Defendant now moves to dismiss for lack of personal jurisdiction and for improper venue, or, in the alternative, for transfer of venue to the Middle District of Florida. For the reasons that follow, this motion must be denied.

## II.

### A. Personal Jurisdiction

Defendant contends that his alleged contacts with the Commonwealth of Virginia—accepting and maintaining employment with a Virginia-based company, communicating regularly with Virginia-based colleagues on business matters, and traveling to Virginia three times for business purposes—are insufficient to establish personal jurisdiction under either the Virginia long-arm statute, Va.Code § 8.01–328.1, or the Due Process Clause of the Fourteenth Amendment.

When a defendant challenges a court's exercise of personal jurisdiction, the plaintiff ordinarily must "prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). But when, as here, a court addresses the question solely on the basis of threshold motion papers, pleadings, and supporting memoranda, the plaintiff's burden is mere-

ly to make a *prima facie* showing of a sufficient jurisdictional basis. *Id.* Under such circumstances, a court must construe all relevant pleading allegations in the light most favorable to the plaintiff and draw all reasonable inferences for the existence of jurisdiction. *Id; see also Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993).[2]

■ Resolution of a personal jurisdiction challenge by a non-resident defendant requires a two-step inquiry. *Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir.1993); *English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir.1990). First, a court must assess whether Virginia's long-arm statute authorizes jurisdiction over the defendant in the circumstances presented. *Ellicott,* 995 F.2d at 477. Second, it must determine whether due process forbids the exercise of jurisdiction in those circumstances. *Id.; English & Smith,* 901 F.2d at 38. This two-step jurisdictional analysis, applied here, compels the conclusion that personal jurisdiction is proper in this case.

### 1. Virginia's Long–Arm Statute

■ Plaintiff's argument in favor of personal jurisdiction relies exclusively on subsection (A)(1) of the Virginia long-arm statute, which provides for the exercise of personal jurisdiction over a defendant "transacting any business" in Virginia, provided that the cause of action asserted "arises from" the business transacted. Va. Code § 8.01–328.1(A)(1) (2004).[3] Virginia's long-arm statute is a "single act" statute, which means that even a single act of business can confer jurisdiction provided that it is "significant" and demonstrates "purposeful activity" in Virginia. *John G. Kolbe, Inc. v. Chromodern Chair Co., Inc.,* 211 Va. 736, 180 S.E.2d 664, 667 (1971); *DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419, 424 (E.D.Va.1996). While no bright-line rule. exists to distinguish the level of activity sufficient to confer jurisdiction from the level that falls short, it is clear that merely entering into a contract with a resident party will not subject a nonresident defendant to personal jurisdiction in the resident's forum unless some substantial part of contractual formation or performance occurs in Virginia.[4] It is equally clear, however, that actual physical presence in the Commonwealth by the defendant is not required. *See, e.g., Peanut Corp. of Am. v. Hollywood Brands, Inc.,* 696 F.2d 311 (4th Cir.1982) (upholding personal jurisdiction based on the defendant's exchange of communications with the resident plaintiff during the contracting process). Determining whether a nonresident defendant's business activity meets the "significance" standard requires an examination of the nature and quality of all of a defendant's business contacts with Virginia

**2.** A threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

**3.** Plaintiff initially argued that subsection (A)(4) of the long-arm statute, which allows for personal jurisdiction over a defendant "causing tortious injury" in Virginia (if certain other conditions are met), provided an alternative basis for personal jurisdiction

here. *See* Va.Code § 8.01–328.1(A)(4) (2004). At oral argument, however, plaintiff conceded that its failure to allege a tortious cause of action in its complaint precludes a finding of personal jurisdiction on this basis.

**4.** *Compare English & Smith,* 901 F.2d at 39 (finding jurisdiction where contract sued upon arose from defendant's solicitation of plaintiff while plaintiff was physically present in Virginia), *with Processing Research, Inc. v. Larson,* 686 F.Supp. 119, 122 (E.D.Va.1988) (finding no jurisdiction where contract sued upon arose from defendant's placement of an advertisement in a national periodical).

that underlie the cause of action, and, in many instances, no single factor or aspect is dispositive. *See Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Cap. Corp.,* 761 F.Supp. 423, 426 (E.D.Va.1991); *cf. English & Smith,* 901 F.2d at 39 n. 4 (stating formal place of contracting and governing law less important than "extent of [defendant's] contacts" with Virginia); *Peanut,* 696 F.2d at 314 (finding jurisdiction based on "sufficient contracting" in Virginia despite fact that contract sued upon was formally formed elsewhere).

Before the "significance" of contacts can be determined, however, a court must first identify which of a nonresident defendant's business contacts with Virginia are eligible to be taken into account in the jurisdictional analysis. This entails construing the long-arm statute's requirement that the cause of action "arise from" the acts proffered as "transacting business" in Virginia. In the context of this case, the question is whether "arising from" includes *all* of defendant's Virginia-related contacts occurring pursuant to his employment with plaintiff, *i.e.,* all of his electronic communications with plaintiff's Virginia headquarters and business-related travels to Virginia, or, instead, only those contacts directly related to the specific alleged breach, *i.e.,* his telephone calls, facsimiles, and emails regarding the Red Bull account.

▪ Whether "arising from" should be construed broadly or narrowly is, of course, a question of legislative intent. While no decision of the Fourth Circuit or Supreme Court of Virginia answers the specific question presented here,[5] control-ling authority uniformly holds that Virginia's purpose in enacting the long-arm statute was "to assert jurisdiction over nonresidents who engage in some purposeful activity in [Virginia] to the extent permissible under the due process clause." *Kolbe,* 180 S.E.2d at 667; *accord Krantz v. Air Line Pilots Assoc.,* 245 Va. 202, 427 S.E.2d 326, 328 (1993); *Nan Ya Plastics Corp. v. DeSantis,* 237 Va. 255, 377 S.E.2d 388, 391 (1989). Under due process principles, personal jurisdiction may be conferred for a specific cause of action not only by the acts giving rise to the claim, but also by acts "related to" the claim itself. *See, e.g., Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Precept Med. Prods., Inc. v. Klus,* 282 F.Supp.2d 381, 386–87 (W.D.N.C.2003). An interpretation of "arising from" that would exclude acts of contract performance not directly related to the alleged breach, therefore, would limit the reach of the long-arm statute in a manner inconsistent with legislative purpose as interpreted by the Supreme Court of Virginia. Put differently, the settled principle that the due process analysis includes contract performance activity not specifically related to the breach, coupled with the settled principle that the Virginia General Assembly intended the long-arm statute to reach to the limits of due process, compels the conclusion that "arising from" should be broadly construed to mean "related to" so as to include within "transacting business" any contract performance activity in the forum even if not directly related to the alleged breach. In sum, because the long-arm statute extends

**5.** In *City of Virginia Beach v. Roanoke River Basin Ass'n,* 776 F.2d 484, 487 (4th Cir.1985), the Fourth Circuit did not specifically construe the phrase "arising from," but stated, "[i]n order for a cause of action to arise from business transacted in Virginia, the activities that support the jurisdictional claim must co-incide with those that form the basis of the plaintiff's substantive claim." *Roanoke River,* however, involved a Virginia municipality's challenge to the validity of pipeline permits issued to the State of North Carolina, and thus provides little guidance on the meaning of "arising from" in the context of this case.

to the limits of due process, the statute's terms should be construed so that the contract performance activity relevant for the due process analysis is also relevant for the "transacting business" analysis.

This conclusion finds support in *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 512 S.E.2d 560 (1999). There, the Supreme Court of Virginia, without specifically addressing the meaning of "arising from," nonetheless reached a result reflecting that the long-arm statute should be interpreted to include acts of contract performance unrelated to the alleged breach in the jurisdictional analysis. *Peninsula Cruise* involved a claim for breach of contract arising from the purchase of a sport fishing boat by a Virginia corporate plaintiff from a Florida corporate defendant. *Id.* at 561. Under the parties' original agreement, the defendant was to transport the boat from its place of business in Florida to South Carolina and there make delivery to plaintiff's employees. *Id.* at 562. When the boat sustained damage en route to the agreed South Carolina delivery point, the defendant, for additional consideration, agreed to transport the boat to Virginia. *Id.* After the defendant reneged on its promise to pay for the boat's repairs, the plaintiff sued for breach of contract in Virginia state court, asserting personal jurisdiction over the defendant under the "transacting business" prong of the long-arm statute. *Id.* Based solely on his delivery of the boat within Virginia's boundaries, the Supreme Court of Virginia held the defendant subject to personal jurisdiction in the Commonwealth. *Id.* at 563–64. Because the claim asserted in *Peninsula Cruise* was based on the defendant's failure to pay for repairs, not the failure to deliver the boat, the case points persuasively to the conclusion that acts of contract performance may confer jurisdiction in a breach of contract action even if those acts are not specifically related to the alleged breach. This reading of *Peninsula Cruise* is supported by *Prolinks, Inc. v. Horizon Organic Dairy*, 58 Va. Cir. 17, 20 (2001), which states in dicta that *Peninsula Cruise* establishes that "part performance of a contract [in the forum] will confer jurisdiction for a cause of action for breach of that contract."

Authority from other jurisdictions also supports this conclusion. For example, in *Agency Rent A Car System, Inc. v. Grand Rent A Car, Corp.*, 98 F.3d 25 (2nd Cir. 1996), a New York-based rental-car franchisor filed a declaratory judgment action in New York against its out-of-state franchisees seeking a declaration that it would not breach its licensing agreements with the franchisees by competing with them in their respective states. The Second Circuit, construing a long-arm statute essentially identical to Virginia's, held that the franchisees were subject to personal jurisdiction in New York because they had "transacted business" under New York's long-arm statute by, among other things, submitting monthly reports and fees to the plaintiff in New York, making daily communications to the plaintiff's New York employees, and locating their professional association and financing organization in New York. *Id.* at 29–31. Rejecting the argument that the contemplated breach of contract claim would "arise" only from (i) the licensing agreements, which were not formed in New York, or (ii) the franchisor-plaintiff's potential breach of those agreements, which would not occur in New York, the court held that because the franchisees' business activities in New York all occurred pursuant to the licensing agreements, the case arose out of those business activities for jurisdictional purposes. *Id.* at 31–32; *see also CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 367 (2d Cir.1986) (holding business visits to the forum unrelated to the alleged breach of contract "not jurisdictionally insignificant"); *Alta Ana-*

*lytics, Inc. v. Muuss,* 75 F.Supp.2d 773, 779 (S.D.Ohio 1999) (holding the defendant employee subject to personal jurisdiction in Ohio based on his business-related travels to Ohio in an action for breach of a non-competition agreement). *But see Martin E. Segal Co. v. Barton,* 612 F.Supp. 935, 937 (S.D.N.Y.1985) (holding that plaintiff-employer's claim that defendant violated non-compete agreement did not arise out of defendant's business-related visits to New York).

In this case, therefore, all of defendant's employment-related business contacts with Virginia may be considered when determining whether he "transacted business" in a manner sufficient under Virginia's long-arm statute. Those contacts, as noted, are (i) his acceptance of employment with a Virginia-based company, (ii) his regular communications with plaintiff's Virginia-based colleagues in the course of performing his employment contract, and (iii) his three trips to plaintiff's Virginia headquarters, also in the course of performing his employment contract.

Each of these contacts, taken individually, might well be insufficient to warrant a finding of personal jurisdiction. It is clear, for example, that entering into a business agreement with a resident of the forum does not, without more, subject a nonresident defendant to personal jurisdiction in Virginia. *America Online, Inc. v. Huang,* 106 F.Supp.2d 848, 855–56 (E.D.Va.2000); *Ellicott Machine,* 995 F.2d at 478. And, the mere exchange of telephone calls, faxes, and written communications with a party in Virginia also may not suffice, although it may. *Compare Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 391, 396 (E.D.Va.1984) (holding "telex messages and letters *negotiating* a transaction are insufficient to form a basis for in personam jurisdiction"), *with Peanut,* 696 F.2d at 314 (holding the exchange of telephone calls and letters, one of which be-

came part of the contract sued upon, sufficient for personal jurisdiction). Even physical presence in the forum state during the negotiating process has been found insufficient when the contract sued upon was both executed and performed completely outside the forum. *See Viers v. Mounts,* 466 F.Supp. 187 (W.D.Va.1979).

■ Yet, when this defendant's contacts with Virginia are viewed *as a whole,* there is little doubt that they amount to a *prima facie* showing of "transacting business" for jurisdictional purposes. They are, by comparison, considerably more significant and purposeful than the contract negotiations and attendant exchanges of communication found sufficient to confer jurisdiction in *Peanut* and *English & Smith.* Neither of those cases, for example, involved actual physical presence in the forum pursuant to the contract sued upon, or a six-year business relationship like that found here. *See Peanut,* 696 F.2d at 314; *English & Smith,* 901 F.2d at 39. Indeed, the facts of this case are essentially indistinguishable from those of *Peninsula Cruise.* Here, as in *Peninsula Cruise,* defendant's relevant business contacts are (i) his entry into an agreement to perform services for a Virginia entity, and (ii) his partial performance of those services in Virginia, both through physical presence and telephonic communications. In sum, the fact that the nonresident defendants in *Peanut, English & Smith,* and *Peninsula Cruise* were all held to have "transacted business" under Virginia's long-arm statute supports the conclusion that jurisdiction is proper in this case.

Defendant argues, however, that *WEB Equipment of Texas, Inc. v. Price,* 49 Va. Cir. 134, 1999 WL 378774 (1999), requires a contrary holding. Like this case, *Price* involved the alleged breach of a non-competition agreement by a nonresident defendant employee whose business contacts

with Virginia included (i) accepting employment with a Virginia-based employer, (ii) communicating regularly with the employer by telephone and telecopier, and (iii) making three business-related trips to the employer's Virginia headquarters. *Id.* at 134–35. Citing *DeSantis v. Hafner,* 949 F.Supp. 419 (E.D.Va.1996), the *Price* court held that such contacts were "too insignificant to confer jurisdiction on Virginia courts." *Price,* 49 Va. Cir. at 137. While *Price* is factually similar to the case at bar, it is ultimately unpersuasive; it includes no reasoning other than reliance on *De-Santis,* which is not instructive on the issue raised here. Indeed, *DeSantis* was a patent infringement suit in which the business contacts found insufficient to confer jurisdiction were the nonresident defendant's (i) magazine advertisements, (ii) single shipment of the allegedly infringing product to an employee of the plaintiff's law firm, and (iii) two shipments of unrelated items to Virginia purchasers. *De-Santis,* 949 F.Supp. at 421. Quite clearly, therefore, *DeSantis* is factually inapposite to *Price* as well as to the instant case. And, given that *Price* cites no authority or reasoning other than *DeSantis* to support its holding, it is neither persuasive nor controlling here.

In sum, all of defendant's business contacts with Virginia in this case are sufficiently related to the cause of action asserted to be relevant to the jurisdictional analysis. Taken together, those contacts amount to "transacting business" under Virginia's long-arm statute, and therefore bring defendant within the long-arm statute's grasp.

### 2. Due Process

■ The second step in the jurisdictional analysis is to assess whether the exercise of personal jurisdiction in the instant circumstances comports with due process. More specifically, the question to be addressed in this second analytical step

is whether the defendant has purposefully established "minimum contacts" with the forum state such that exercise of personal jurisdiction over him "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); *English & Smith,* 901 F.2d at 39. Under the "minimum contacts" test, the plaintiff must show that the defendant "purposely directed his activities at residents of the forum," and that the plaintiff's claim arises from or relates to those activities. *Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *America Online,* 106 F.Supp.2d at 855. It is designed to ensure that the defendant is not "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); *America Online,* 106 F.Supp.2d at 856. Put differently, the test protects the defendant from having to defend himself in a forum where he should not have anticipated being sued. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1979).

■ These principles, applied here, point persuasively to the conclusion that personal jurisdiction, in this case, is proper in Virginia under the Due Process Clause. As *Burger King* instructs, "where the defendant 'deliberately' has engaged in significant activities within a State or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174 (citations omitted). Therefore, "it is pre-

sumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 476, 105 S.Ct. 2174. Here, defendant engaged in "significant activities" in the forum on each of his three trips to plaintiff's Virginia headquarters. *Id.* Further, he created "continuing obligations" between himself and forum residents by accepting employment with a Virginia-based company. *Id.* Thus, defendant has undertaken not one, but two courses of action that *Burger King* identifies as sufficient to satisfy due process.

■ Defendant's principal argument to the contrary stresses the facts (i) that no part of defendant's recruitment occurred in Virginia, (ii) that none of the clients for whom he produced events were Virginia-based, and (iii) that none of the events he produced took place in Virginia. According to defendant, the lack of a Virginia nexus for these three aspects of defendant's employment with plaintiff renders personal jurisdiction constitutionally unsound. This argument misses the mark. The focus of the "minimum contacts" analysis is not *which* contacts with the forum are absent, nor *where* the contacts predominate, but only *"whether* enough minimum contacts [with the forum] exist [such] that the district court's assumption of specific jurisdiction does not offend due process." *English & Smith,* 901 F.2d at 39 (emphasis added). In short, the mere fact that the greater part of defendant's involvement with plaintiff took place in Florida, not Virginia, does not make personal jurisdiction violative of due process; instead, what matters here is that defendant purposefully established sufficient contacts with Virginia to made jurisdiction constitutionally reasonable.

## B. Venue

■ The parties to this case agree that venue is proper in the Eastern District of Virginia only if the record reflects that "a substantial part of the events or omissions giving rise to the claim occurred" in this district. *See* 28 U.S.C. § 1391(a)(2) (2004). Defendant contends that because the contract giving rise to plaintiff's claim was formed in Florida, and allegedly breached outside of this district, no "substantial part" of the events underlying this action occurred in the Eastern District of Virginia. To survive a motion to dismiss for improper venue when no evidentiary hearing is held, a plaintiff need only make a *prima facie* showing of venue. *Mitrano v. Hawes,* 377 F.3d 402, 405 (4th Cir.2004); *see Delong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir. 1988).

■ As the Fourth Circuit recently noted in *Mitrano v. Hawes,* 377 F.3d 402 (4th Cir.2004), section 1391(a)(2) was added in 1990 as a replacement for a similar subsection permitting venue in the judicial district "in which the claim arose." *See, e.g.,* 28 U.S.C. § 1391(a) (1988). The purpose of the "substantial part" language, *Mitrano* explains, was to eliminate the need to identify the district having the *most* significant connection to the claim at issue. *Mitrano,* 377 F.3d at 405. Under the new statute, therefore, venue may be proper in more than one district. *Id.* Accordingly, in determining whether events or omissions are sufficiently "substantial" to support venue, a court should "not focus only on those matters that are in dispute or that directly led to the filing of the action," but rather "should review 'the entire sequence of events underlying the claim.'" *Id.* (quoting *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 264 (6th Cir. 1998)).

■ The *Mitrano* principles applied to the facts of this case point persuasively to the conclusion that venue in this case is proper in the Eastern District of Virginia.

First, because plaintiff's Virginia headquarters is located in this district, and because defendant's communications with and visits to that headquarters come within the "sequence of events underlying the claim" at issue here, those same business contacts provide a basis for venue as well as for personal jurisdiction. *Id.; cf. Ciena Corp. v. Jarrard,* 203 F.3d 312, 318 (4th Cir.2000) (noting that the nonresident defendant employee's business trips to the forum "support the district court's exercise of personal jurisdiction ... [and] provide a basis for venue [in the forum]"). Second, a substantial part of plaintiff's effort to win and maintain Red Bull as a client occurred at plaintiff's headquarters. Third and finally, a great part of the confidential information that defendant allegedly used to solicit Red Bull originated at the headquarters as well. Accordingly, a "substantial part" of the events giving rise to plaintiff's claim can be said to have occurred in the Eastern District of Virginia.

## C. Transfer of Venue

■■■ Federal law provides that a district court may transfer any civil action to any other appropriate district court "[f]or the convenience of parties and witnesses, and in the interest of justice...." 28 U.S.C. § 1404(a) (2004). The decision whether to transfer is committed to the sound discretion of the reviewing court. *Koh v. Microtek Int'l Inc.,* 250 F.Supp.2d 627, 630 (E.D.Va.2003).[6] There is, however, "a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public factors clearly point toward trial in the alternative forum." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *see also Koh,* 250 F.Supp.2d at 633; *Eastern Scientific Mar-*

*keting, Inc. v. Tekna–Seal, Inc.,* 696 F.Supp. 173, 179 (E.D.Va.1988) ("Plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed."). Additionally, a plaintiff's choice of its home forum is given more weight than its choice of a foreign forum. *GTE Wireless v. Qualcomm, Inc.,* 71 F.Supp.2d 517, 519 (E.D.Va.1999). Of course, little or no weight should be accorded to a plaintiff's choice of forum where that forum is neither the plaintiff's home forum nor a forum with any significant connection to the dispute. *See id.; Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 589 (E.D.Va.1992).

■■■ In this case, plaintiff's chosen forum is its home forum, and it follows that this choice should not be disturbed unless other factors "clearly point toward trial in the alternative forum." *Piper Aircraft,* 454 U.S. at 255, 102 S.Ct. 252. They do not. The convenience of the parties does not favor transfer. While it is true that litigating in Florida would be more convenient and less costly to defendant, it appears that plaintiff plausibly finds it more convenient and less costly to litigate the dispute in its home forum. Thus, a transfer would merely "shift the balance of inconvenience" in defendant's favor. *Tekna–Seal,* 696 F.Supp. at 180. In such circumstances, transfer is not warranted. *Id.*

■■■ Convenience to non-party witnesses may carry more weight in the transfer analysis. *See Koh,* 250 F.Supp.2d at 636. On this point, defendant has the burden "to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconven-

---

**6.** For a listing of all the factors relevant to the § 1404(a) calculus and the cases discussing these factors, see *Questions as to Convenience and Justice of Transfer Under Forum Non Conveniens Provision of Judicial Code,* 1 A.L.R. Fed. 15.

ience." *Id.* While defendant has produced affidavits from *plaintiff's* intended non-party witnesses stating that, despite their Virginia-area residences, they would not be inconvenienced if this case were transferred, he has produced no evidence of any witnesses of his own who would be greatly inconvenienced by litigating in this district. Although a motion to transfer venue must be brought at an early stage in litigation when it is typically difficult to anticipate the identity of trial witnesses, or the matters upon which they will testify, defendant's failure to produce any evidence of inconvenience to non-party witnesses weighs against transfer.

A third convenience-related factor, access to sources of proof, similarly favors maintaining this action in this district. While each party contends that the documents and other materials most pertinent to the issues in this lawsuit are located in its preferred forum, plaintiff correctly notes that the majority of materials bearing on the Red Bull account or defendant's employment with plaintiff are presently in plaintiff's possession in this forum. In any event, the volume of documents pertinent to this case is not likely large enough to affect the transfer calculus.

Factors relevant to the interests of justice are similarly inconclusive, and thus favor the denial of transfer. While defendant correctly argues that Florida substantive law will govern the interpretation of the contract at issue, the fact that the courts of the Middle District of Florida are likely to be more familiar with the law relevant to this case is offset by the docket condition in this district, where disputes are generally resolved in less than half the time that they are in defendant's preferred forum.

In sum, defendant has failed to show that either convenience-related factors or the interests of justice weigh heavily in favor of transferring this action from plain-tiff's home forum to the Middle District of Florida. Plaintiff's choice of forum, therefore, will not be disturbed.

### Conclusion

For the foregoing reasons, defendant's motion is denied.