**Kathryn G. HOLLAND, K. Patricia Stanley, and Hollstan Enterprises, Ltd., Plaintiffs,**

v.

**Donald M. HAY, John Barton Puett, and the Maid Brigade Systems, Inc., Defendants.**

Civ. A. No. 2:93cv978.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 18, 1994.

Cheryl Schroeder Thomas, Virginia Beach, VA, for plaintiffs.

John S. Wilson, John Y. Pearson, Jr., Willcox & Savage, P.C., Norfolk, VA, and Leland G. Cook, and Marcia M. Ernst, Smith, Gambrell & Russell, Atlanta, GA, for defendants.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This case comes before the court on defendants' motion to dismiss or stay the action under the *Colorado River* doctrine of abstention. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Defendants assert that the instant suit should be stayed or dismissed pending judgment in a concurrent Georgia state court action, arising out of virtually the same set of facts and claims as this federal action. Alternatively, defendants move this court to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction), 12(b)(3) (improper venue), and 12(b)(4) (insufficient service of process).

### I. Factual and Procedural History

Defendant The Maid Brigade Systems, Inc. ("MBS") is a Delaware corporation with

its principal place of business in Gwinnet County, Georgia. Defendants Donald M. Hay, president of defendant corporation, and John Barton Puett, its director of franchise operations, are individuals who reside in Georgia. Plaintiff Hollstan Enterprises, Ltd. ("Hollstan") is a Virginia corporation with its principal place of business in Suffolk, Virginia. Plaintiffs Kathryn G. Holland and K. Patricia Stanley, officers of Hollstan, reside in Virginia.

MBS developed an integrated system for the operation of a household cleaning service and, shortly thereafter, began granting franchises authorizing the use of the Maid Brigade name and system. On November 5, 1986, plaintiff Holland entered into a franchise agreement with defendant MBS and became a franchisee. In December of 1986, defendant MBS invited its franchisees, including plaintiffs Holland and Stanley to Georgia for a sales presentation. The purpose of the presentation was to offer subfranchisor contractual arrangements to the invitees. Plaintiffs Holland and Stanley negotiated with defendant MBS and ultimately decided to enter into such a contract.[1]

Defendant MBS mailed the contract to Virginia and plaintiffs Holland and Stanley executed it there on December 15, 1986. The contract granted plaintiffs Holland and Stanley, for a term of ten years, the exclusive right to search for, interview, select and recommend potential Maid Brigade franchisees in the states of North Carolina, West Virginia, and all of Virginia except Fairfax and Loudon Counties. The agreement further provided that defendant MBS would pay to the subfranchisor eighty-five percent of all royalties paid to it by the franchisees. On December 18, 1986, plaintiffs Holland and Stanley made a $25,000 partial payment of the $100,000 initial franchise fee to defendant MBS in Georgia. Thereafter, on January 9, 1987, plaintiffs Holland and Stanley assigned the subfranchise to plaintiff Hollstan, as contemplated and allowed by the subfranchise

agreement. Plaintiff Hollstan continued to make payments on the franchise fee until January of 1993, when it failed to make a payment.

The terms of the Master Franchise Agreement provided for a triparty franchise contract between the franchisor, subfranchisor and franchisee in the event that MBS granted a franchise as recommended by plaintiff Hollstan. That triparty franchise agreement required the franchisee pay to the franchisor a seven percent royalty based on the franchisee's gross revenue.[2] According to plaintiff Hollstan, in early December of 1992, defendant MBS circulated a reduced royalty structure to plaintiff Hollstan's franchisees, without Hollstan's consent. Plaintiffs then advised MBS that they would escrow all future franchise fee payments until such time as the controversy could be resolved. Thereafter, MBS terminated plaintiff Hollstan's subfranchise for nonpayment of the franchise fee.

From the time defendant MBS granted the subfranchise until it terminated same, the parties communicated over the telephone, facsimile machine, and by telegram on a daily basis. Plaintiff Hollstan mailed all its master franchise fee installments, and payments from its franchisees, to MBS in Georgia. Further, plaintiffs attended franchisee and subfranchisor meetings hosted by defendant MBS in Georgia, and defendants Hay and Puett attended franchisee meetings in Virginia. Defendants Hay and Puett, at these meetings and on other occasions, came to Virginia to solicit additional Maid Brigade franchises and to induce existing franchisees to increase their business volume.

When Hollstan failed to make its January, 1993 franchise payment, MBS, defendant in this action, instituted suit in the Superior Court of Gwinnet County, Georgia on February 23, 1993. In that suit, MBS seeks to recover the remainder of the franchise fee, attorneys fees and costs, a judgment declaring the franchise agreement terminated, and injunctive relief to prevent Hollstan from

---

1. The parties dispute whether negotiation of the contract occurred in Georgia or over the phone between defendants in Georgia and plaintiffs in Virginia. For purposes of the court's analysis, the distinction is irrelevant.

2. Plaintiff Hollstan, the subfranchisor, then received eighty-five percent of this royalty, pursuant to the terms of the Master Franchise Agreement.

interfering with its franchisees.[3] Plaintiff Hollstan then brought suit in the Circuit Court of the City of Suffolk, Virginia on August 31, 1993. Subsequently, defendants removed the action to this court and filed a motion to dismiss or stay this action, together with a brief in support thereof. Plaintiffs having filed a brief in opposition, the motion to dismiss or stay is now ripe for decision.

## II. Standard of Review

On a motion to dismiss, the court considers plaintiffs' allegations as true, and views the record as a whole in the light most favorable to them. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). As a general rule, a motion to dismiss for lack of personal jurisdiction should be denied if the complaint alleges sufficient facts to support the reasonable inference that the defendants could be subjected to the jurisdiction of the court. *Cable News Network, Inc. v. Video Monitoring Servs. of America, Inc.*, 723 F.Supp. 765, 766 (N.D.Ga. 1989).

## III. Analysis

Defendants contend that application of the Supreme Court's decision in *Colorado River*, 424 U.S. 800, 96 S.Ct. 1236, requires this court to stay or dismiss the case *sub judice*, pending the outcome of the Georgia state court action. Their argument is based, in part, on the contention that this court lacks personal jurisdiction. For this reason, it is necessary to determine initially whether this court may exercise jurisdiction over defendants and only then whether, under *Colorado River*, abstention is appropriate.

### A. Personal Jurisdiction

The Fourth Circuit has set forth a two-step analysis that courts should apply when evaluating the propriety of jurisdiction obtained pursuant to a long-arm statute. *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990). First, a court "must determine whether the statutory language applies to the defendant; second, if the statutory language applies, [the court] must determine whether the statutory assertion is consistent with the due process clause of the Constitution." *Id.; see Verosol, B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 587 (E.D.Va. 1992).

#### 1. The Corporate Defendant

##### The Long–Arm Statute

Plaintiffs are proceeding under a section of the Virginia long-arm statute providing that a court may exercise jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's transaction of business in Virginia. Va.Code Ann. § 8.01–328.1(A)(1) (Michie 1992). The Virginia Supreme Court has stated that the "manifest purpose" of this section of the Virginia long-arm statute is " 'to assert jurisdiction over non-residents who engage in some purposeful activity in [Virginia] to the extent possible under the due process clause.' " *Raymond, Colesar, Glaspy & Huss v. Allied Capital*, 761 F.Supp. 423, 426 (E.D.Va.1991) (quoting *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664, 667 (1971)). Moreover, the Virginia long-arm statute is a single act statute. Therefore, under section 8.01–328.1(A)(1), " 'a single act by a nonresident which amounts to transacting business in Virginia and gives rise to the cause of action may be sufficient to confer jurisdiction upon [Virginia] courts.' "[4] *Metzger*, 901 F.2d at 39 (quoting *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 238 S.E.2d 800, 802 (1977)).

---

**3.** Hollstan removed the Georgia suit to the United States District Court for the Northern District of Georgia on March 29, 1993, and concurrently filed a motion to dismiss for lack of personal jurisdiction. MBS opposed the motion and requested that the case be remanded for lack of the requisite jurisdictional amount in controversy. On September 22, 1993, the federal court remanded the case to the Gwinnet County Superior Court and denied the motion to dismiss as moot.

**4.** Under section (A)(1), the cause of action must arise from the transaction of business in Virginia. Thus, the acts conferring jurisdiction under the statute must coincide with the acts giving rise to the substantive claim. *Allied Capital*, 761 F.Supp. at 426.

■ As this court has noted, determining whether the Virginia long-arm statute permits jurisdiction requires an examination of both the quantity and quality of the defendants' contacts with Virginia. *Allied Capital*, 761 F.Supp. at 426. The analysis "involves questions such as who benefited from the contacts, who initiated them and why, whether the contacts involved any person's physical presence in the state, and what further conduct in the forum was contemplated by the parties." *Id.* Applying this analysis, defendant MBS' contacts with Virginia clearly are sufficient to constitute the transaction of business within the meaning of the statute.

Defendant MBS initiated the relationship with plaintiffs Holland and Stanley, inviting them to become subfranchisors, knowing that they were Virginia residents. Moreover, defendant MBS anticipated that Holland and Stanley, as subfranchisors, would establish franchises in Virginia. The contract was sent to plaintiffs in Virginia and signed by them in Virginia. Furthermore, the parties communicated on a daily basis via telephone, mail and fax. Defendant MBS sent letters and other communications to plaintiffs in Virginia and received payments from Maid Brigade franchises located in Virginia. The corporate defendant contends that the contract was performed in Georgia because that is where payments were received. However, the contract also called for plaintiffs to recruit and set up franchises in Virginia, to oversee those franchises for the franchisor, and to collect payments from franchisees in Virginia for remittance to defendant MBS. A substantial part, if not all, of the contract was in fact performed in Virginia. *See Cancun Adventure Tours v. Underwater Design, Inc.*, 862 F.2d 1044, 1046 (4th Cir.1988) (jurisdiction appropriate under Virginia long-arm statute when defendant negotiated and undertook contractual obligation with Virginia resident, mailed purchase orders to Virginia,

and continued to deal with Virginia resident by telephone and through the mails).

Moreover, plaintiffs contend, and the court accepts as true for purposes of this motion to dismiss, that defendants Hay and Puett traveled to Virginia on three occasions to meet with Virginia franchisees and to solicit additional franchisees. Having derived substantial revenue from Virginia franchisees, due to its arrangement with plaintiff Hollstan, MBS cannot be heard to argue now that it did not transact business in Virginia.

■ Defendant contends that the cause of action in the case at bar does not arise from its transaction of business in Virginia. However, plaintiffs claims of fraud and violations of the Virginia Retail Franchising Act stem directly from the ongoing contractual relationship between the parties. Their status as franchisor and subfranchisor, a status created by the subfranchise contract, ultimately is the basis for this suit. Clearly, the cause of action arose from defendant's transaction of business in Virginia.

Given the above facts, it is clear that defendant MBS transacted business in Virginia. Indeed, the case for jurisdiction here is stronger than in a similar case, *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311 (4th Cir.1982), in which the Fourth Circuit held that personal jurisdiction existed in Virginia over an Illinois defendant sued by Virginia plaintiffs for breach of contract. In *Peanut Corp.*, negotiations concerning the contract were conducted entirely through the mail and over the telephone; the defendant never set foot in Virginia.[5] The Fourth Circuit affirmed the trial court's finding of personal jurisdiction, stating:

> Although [defendant] argues that it had no contacts with Virginia concerning the disputed contract, the modification letter, which became a part of the basic contract

5. The defendant, Hollywood Brands, manufactured and distributed peanut filled candy bars. After defendant's processing facility was destroyed by fire, plaintiffs contacted Hollywood Brands to determine whether it wished to purchase peanuts. *Peanut Corp.*, 696 F.2d at 312. Defendant sent two purchase orders, together with a third modification, to plaintiffs in Virginia, which served as the basis of a contract

between the parties. *Id.* at 313. In resolving a dispute over Hollywood Brands' expected performance, the parties corresponded back and forth. Defendant eventually refused to order any more peanuts and plaintiffs filed suit. *Id.; see Allied Capital*, 761 F.Supp. at 427–28 (discussing the Fourth Circuit's opinion in *Peanut Corp.*, 696 F.2d 311).

was addressed to and received by [plaintiffs] in Virginia, telephonic negotiations occurred with one of the participants located in Virginia, and numerous written communiques between the parties were sent to and received in Virginia. There was sufficient 'contracting' in Virginia to amount to the transaction of business from which the cause of action arose. Plaintiffs' cause of action was a direct result of [defendant's] transaction of business within Virginia, and so the requirement that the cause of action arose from the transacting of the business was clearly satisfied.

*Id.* at 314. The case *sub judice* is factually similar to *Peanut Corp.*, but even more persuasive because of the greater number of contacts and the actual physical presence of defendant MBS in the forum state.

### Due Process

■ Having determined that the Virginia statute would confer jurisdiction over defendant MBS, this court next must determine whether that exercise of jurisdiction would violate due process. *Metzger,* 901 F.2d at 39. A nonresident defendant must have sufficient "minimum contacts" with the forum state, such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Defendant MBS contends that it does not have the requisite minimum contacts with Virginia because it conducted its business through the mail and over the telephone and because the contract was to be performed outside Virginia.[6]

However, as the Fourth Circuit has stated, "[t]he relevant question is not wh[ether] the contacts predominate, but only whether enough minimum contacts exist that this court's assumption of jurisdiction will satisfy due process." *Metzger,* 901 F.2d at 39. Here, as in *Peanut Corp.* and *Metzger,* the fact that the parties conducted their business over the phone and by mail is not dispositive. The phone and mail contacts must be consid-

ered together with other contacts defendant MBS had with Virginia, such as the trips defendants Hay and Puett took to Virginia.

Taking into consideration traditional notions of fair play, the Supreme Court has determined that

> [w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). The fact that defendant did not physically enter the forum state is not determinative. *Id.* Defendant MBS here not only entered the state to attend meetings in Virginia, it also directed its activities toward the forum. The corporate defendant initiated contact with plaintiffs Holland and Stanley in Virginia, entered into a contract signed by plaintiffs in Virginia, and carried on a continuing relationship with plaintiffs in Virginia while plaintiffs recruited franchisees in Virginia for defendant franchisor. *See Metzger,* 901 F.2d at 39–40; *Cancun Adventure Tours,* 862 F.2d at 1046. MBS entered into the contract with plaintiffs in order to expand its business in Virginia and thus clearly directed its activities toward Virginia. The corporate defendant's intentional contacts with Virginia were sufficient that it should "reasonably [have] anticipate[d] being haled into court there." *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This court's exercise of personal jurisdiction over defendant MBS is justified under the Virginia long-arm statute and comports with the Due Process Clause of the Constitution.

### 2. The Individual Defendants

■ Defendants contend that, even if the corporate defendant is amenable to suit in Virginia, the individual defendants are not.

---

**6.** *See* discussion *supra* at 1095–1096, regarding whether the contract was to be performed entirely outside the state of Virginia. As noted previ-

ously, such does not appear to have been the case. *See supra* at 1096.

The Fourth Circuit has held that, when a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state and service is made upon him under the forum state's long-arm statute, "he is properly subject to the jurisdiction of the forum court, *provided the long arm statute of the forum state is extensive with the full reach of due process.*" *Columbia Briargate Co. v. First Nat. Bank,* 713 F.2d 1052, 1064 (4th Cir.1983), *cert. denied sub nom., Pearson v. Columbia Briargate Co.,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984). On the other hand,

> if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and *if any connection he had with the commission of the tort occurred without the forum state,* the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.

*Id.* at 1064–65 (emphasis added).

The complaint reveals that plaintiffs' claim rests largely on the fact that defendants Hay and Puett are employees or officers of the corporate defendant. Furthermore, the fraudulent statements allegedly made by defendants occurred in Georgia. Thus, any connection defendants Hay and Puett had with the tort alleged by plaintiffs occurred outside Virginia. Under the Fourth Circuit's reasoning in *Columbia Briargate,* 713 F.2d at 1064–65, defendants Hay and Puett are not amendable to this court's jurisdiction. *See Miller & Rhoads v. West,* 442 F.Supp. 341 (E.D.Va.1977) (construing the Virginia long-arm statute to reach a similar result). Therefore, the court GRANTS defendants'

motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction, as to defendants Hay and Puett.[7]

### B. Abstention or Dismissal under Colorado River

Defendant MBS instituted an action in Georgia state court alleging plaintiff Hollstan's failure to pay the remainder of the franchise fee as a breach of contract and seeking monetary damages, as well as declaratory and injunctive relief.[8] After attempting to remove the Georgia action to federal court, plaintiffs filed this suit in Virginia state court, seeking a monetary award and injunctive relief. Plaintiffs allege in this action that defendants fraudulently induced them to enter into the Master Franchise Agreement and that, in violation of the Virginia Retail Franchising Act, defendants wrongfully terminated the Agreement. In the meantime, plaintiffs have filed an answer in the Georgia suit and have asserted, as compulsory counterclaims, fraudulent inducement and wrongful termination claims against defendant MBS. It appears that substantially the same issues involved in the state court action are now before this court.[9] Accordingly, defendants now have moved this court to stay or dismiss this federal diversity action pending the outcome of the Georgia litigation.

The general rule applied in the district courts is that the "pendency of a state court proceeding is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910); *Harris v. Pernsley,* 755 F.2d 338, 345 (3d Cir.), *cert. denied,* 474 U.S. 965, 106 S.Ct. 331, 88 L.Ed.2d 314 (1985). The Su-

---

7. Defendants' motions to dismiss for improper venue and insufficient service of process are both based on the alleged lack of personal jurisdiction over defendants. This court's rulings on personal jurisdiction, as to the individual defendants, and on the *Colorado River* issue, *infra* at 1102, as to the corporate defendant, renders those motions moot.

8. MBS seeks a declaratory judgment that the Master Franchise Agreement has been terminated and a preliminary injunction preventing Hollstan from interfering with MBS' franchisees.

9. Plaintiffs assert that the parties are not identical because they have sued both the corporate defendant, MBS, and the individual defendants, Hay and Puett. Only MBS is involved in the Georgia state court action. However, as this court held above, defendants Hay and Puett are not amenable to jurisdiction in this court. Moreover, Hollstan may bring them into the Georgia litigation easily, as they are subject to the state court's jurisdiction.

preme Court has held, however, that a federal court may abstain in the face of duplicative state proceedings when "exceptional" circumstances exist. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1975).

When a litigant urges abstention or dismissal on the ground that concurrent federal and state suits present exceptional circumstances, the district court must first determine whether the state and federal proceedings are parallel. *New Beckley Mining Corp. v. International Union, UMWA,* 946 F.2d 1072, 1073 (4th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1587, 118 L.Ed.2d 306 (1992). Second, the party seeking the stay must "carry the burden of demonstrating that adequate grounds exist to justify granting the stay." *Sea Colony, Inc. v. Alcan Aluminum Corp.,* 653 F.Supp. 1323, 1326 (D.Del.1987). The district court must carefully weigh its "virtually unflagging obligation" to exercise jurisdiction against those factors militating against that exercise. *Id.* As the Supreme Court has counseled, the court's "task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction . . .; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

In *Colorado River,* the Supreme Court identified several factors courts should consider in determining whether exceptional circumstances exist in a particular case: (1) whether property is involved over which the state court has assumed jurisdiction; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1247; *see McLaughlin v. United Virginia Bank,*

955 F.2d 930, 934 (1992). Later, the Court added additional factors, including whether federal law provides the rule of decision on the merits, *Moses H. Cone,* 460 U.S. at 23, 103 S.Ct. at 941, inadequacy of the state court proceeding to protect the plaintiff's rights, *id.* at 26, 103 S.Ct. at 942, and whether "either the state or federal suit 'was a contrived, defensive reaction' to the other." *McLaughlin,* 955 F.2d at 934–35 (citing *Moses H. Cone,* 460 U.S. at 17–18 n. 20, 103 S.Ct. at 937–38 n. 20). Courts are not to use the factors as a "mechanical checklist;" rather, they should balance the important factors applying in a given case against their heavy obligation to exercise jurisdiction. *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937.

### 1. Parallel State and Federal Proceedings

■ Before examining the various factors identified by the Supreme Court in *Colorado River* and its progeny, the court must determine whether the state and federal proceedings are parallel. *New Beckley,* 946 F.2d at 1073. The proceedings need not be identical, but rather substantially similar. *Sea Colony,* 653 F.Supp. at 1326. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley,* 946 F.2d at 1073.

■ A comparison of the complaint and answer filed in the Georgia litigation with the complaint filed in this action reveals that the state and federal proceedings here are parallel. Plaintiffs contend that the suits at issue are dissimilar because plaintiffs assert, in the federal court action, a claim for wrongful termination under Virginia's Retail Franchise Act. Georgia has no similar statute and plaintiffs claim that, if forced to proceed in Georgia, they will be required to refile in Virginia to recover under the Virginia statute. This contention lacks merit. Not only can plaintiffs assert such a claim in the Georgia action, under Georgia's compulsory counterclaim rule, they must do so. *See* O.C.G.A. § 9–11–13(a).[10] In fact, plaintiffs have as-

---

10. The Georgia statute is essentially identical to Federal Rule of Civil Procedure 13(a). Under the state and federal rules, each party must assert any claim it has which arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. There is no reason plaintiffs cannot assert a claim arising under Virginia law in a Georgia court. The Georgia state court will simply apply Virginia law in deciding the merits of the claim, just as

serted a counterclaim in the Georgia action alleging wrongful termination of the franchise agreement. Clearly, the issues involved in the two suits are *substantially similar, if not identical.*

Furthermore, the relief requested in the two actions is nearly identical. *See New Beckley,* 946 F.2d at 1074 (noting that a difference in remedies is a factor counseling denial of a motion to abstain and becomes more pronounced when one suit requires a jury and the other does not). Both parties request monetary damages as well as equitable relief, in the form of an injunction. Finally, the parties to the two actions are substantially similar. Plaintiffs point to the fact that defendants Hay and Puett are not parties to the federal court action. However, as decided above, this court lacks jurisdiction over said defendants.[11] Moreover, plaintiffs may make Hay and Puett parties to the litigation in Georgia, because they are subject to that court's jurisdiction. *See* O.C.G.A. § 9–11–13(h) (persons other than those made parties to the original action may be made parties to a counterclaim). Because the federal and state court proceedings are duplicative, the court turns to a consideration of the *Colorado River* doctrine.

### 2. The Exceptional Circumstances Test

As discussed above, the Supreme Court has identified several factors which the district court must consider, and balance against its heavy obligation to exercise jurisdiction, in determining whether to stay or dismiss the federal litigation. Preliminarily, the parties agree that no res or property is involved over which either court has asserted jurisdiction. The court moves next to a discussion of each of the relevant factors delineated by the Supreme Court in *Colorado River* and *Moses H. Cone.*

#### Inconvenience of the Federal Forum

■ Among other things, convenience refers to the "relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), *cited with approval in Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–47; *see also, Sea Colony,* 653 F.Supp. at 1327. Defendants contend that the federal forum is inconvenient because defendants themselves reside in Georgia, as do their witnesses, and their documentary evidence is located there. Plaintiffs contend that identical reasons make the Georgia forum inconvenient. It appears to the court that neither forum is more convenient than the other. The convenience factor being neutral, the court finds that defendants have not demonstrated that the federal forum is inconvenient.

#### Order in Which Jurisdiction Was Obtained

■ Defendant MBS filed suit in Georgia on February 23, 1993. Only after attempting to remove that action to federal court in Georgia did plaintiffs file this action in Virginia state court on August 31, 1993. Thus, the state court obtained jurisdiction before the federal court. The Supreme Court has counseled, however, that this factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. *Id.*

Plaintiffs claim that the federal action has not progressed any further than the state court litigation. However, the federal suit presently is in the very preliminary motion to dismiss stage. On the other hand, plaintiff Hollstan has filed an answer in the state court action, the court has obtained jurisdiction over Hollstan, and the parties are ready to move ahead. The court finds, therefore, that the Georgia state court litigation has progressed to a considerably later stage than has the federal action. The federal action certainly has not reached the stage where it would be unjust to stay or dismiss the suit pending the outcome of the Georgia litigation. *See Sea Colony,* 653 F.Supp. at 1328.

this federal court would have to do were it to decide the case *sub judice.*

**11.** *See supra* at 1097–1098.

### Avoiding Piecemeal Litigation

 The Supreme Court has referred to the policy of avoiding piecemeal litigation as by far the most important *Colorado River* factor. *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937. Consideration of this factor requires an "inquiry into the scope of the proceeding and nature of available defenses in the pending State court action." *Sea Colony*, 653 F.Supp. at 1327. The federal court may consider whether "the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, and whether such parties are amenable to process in that proceeding." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942), *cited with approval in Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–47.

As far as the scope of the two proceedings is concerned, there is little doubt that denial of defendants' motion for stay or dismissal will result in two separate lawsuits over essentially the same issues. Moreover, because defendants Hay and Puett are not subject to the jurisdiction of the federal court, proceeding in the federal forum will result in an incomplete resolution of plaintiffs' claims.[12] As the Supreme Court has noted, the principles behind the *Colorado River* abstention doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). Because this court cannot obtain jurisdiction over defendants Hay and Puett, plaintiffs may be forced to sue these defendants in a Georgia court, thus engendering precisely the sort of piecemeal litigation *Colorado River* abstention was designed to avoid. Finally,

proceeding in both the federal and state forums, because of the absence of Hay and Puett, opens the door to the possibility of inconsistent results at trial. For the foregoing reasons, the court concludes that the policy against piecemeal litigation counsels in favor of staying or dismissing this action.

### Rule of Decision on the Merits

 The Master Franchise Agreement involved in this case contains a choice of law clause indicating that Georgia law governs its construction. Similarly, plaintiffs' fraudulent inducement claim is likely to be resolved pursuant to Georgia law. This fact weighs in favor of a decision to stay or dismiss the federal litigation. Georgia state courts, "which wrestle on a daily basis with their own statutes and precedent, are more familiar than this court with the applicable law." *Domingo v. Paul*, No. HAR 92–686, 1992 WL 333842, at * 8, 1992 U.S.Dist. LEXIS 17328, at *25 (D.Md. Nov. 5, 1992) (UP).

Importantly, there is no federal law or overriding federal policy at stake in this "necessitating this court's protection."[13] *Id.* As the Supreme Court noted in *Moses H. Cone*, "[t]he presence of federal law issues must always be a major consideration weighing against surrender." 460 U.S. at 26, 103 S.Ct. at 942. "In the absence of such issues, there is no overarching federalist mandate that the Court refrain from abstaining." *Domingo*, 1992 WL 333842, at *8, 1992 U.S.Dist. LEXIS 17328, at *25. Because Georgia law governs this dispute, and in the absence of any federal question or federal policy in favor of assuming jurisdiction, this court finds that the source of law factor weighs in favor of abstention.

### Adequacy of the State Court Proceeding

 This factor involves the ability of the state court to adequately protect plaintiffs' rights and its ability to provide full relief.

**12.** As discussed previously, defendants Hay and Puett are subject to personal jurisdiction in Georgia and easily can be added as parties to the Georgia action. *See supra* at 1100 and note 9.

**13.** Indeed, the only federal policy involved weighs in favor of granting a stay. The federal policy in favor of judicial economy dictates that, because the issues in these two suits are identi-

cal, "separate trials will result in the inefficient expenditure of valuable judicial resources." *Sea Colony*, 653 F.Supp. at 1329. Additionally, a stay will "promote comity between federal and state courts by removing the potential for differing results in the two actions." *Id.; see also Great American Ins. Co. v. Cavalier Printing Ink Co., Inc.*, 620 F.Supp. 1082, 1083–84 (E.D.Va. 1985).

*Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942; *Great American,* 620 F.Supp. at 1084. The relief available to plaintiffs in federal court is also available to them in Georgia state court. Plaintiffs request monetary damages and injunctive relief, both of which the state court is capable of providing. There is nothing special in the relief requested that requires that the case be litigated in federal court. *See, e.g., Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942 (doubtful whether state court could grant order compelling arbitration).

Moreover, the state court can provide fuller relief and better protect plaintiffs' rights. This is so because defendants Hay and Puett are amenable to suit in the Georgia court system. Plaintiffs need only amend their counterclaim to add Hay and Puett as parties. Proceeding in federal court fails to protect plaintiffs' claims against those parties.

### *Reactive Nature of the Federal Suit*

▮ In *Moses H. Cone,* the Court, in a footnote, found considerable merit in the argument that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River.*" 460 U.S. at 17–18 n. 20, 103 S.Ct. at 937–38 n. 20. The Fourth Circuit appears to have accepted the reactive nature of the suit as one of the factors to be considered when determining the propriety of abstention. *McLaughlin,* 955 F.2d at 935. In the instant suit, it appears that plaintiffs filed the federal court action in order to sidestep the Georgia court's jurisdiction and reverse the roles of the parties. Plaintiffs filed this action only after their attempts to remove the case to federal court and avoid the Georgia state court's jurisdiction failed. Hence, a stay or dismissal is warranted as a means to deter vexatious use of the courts.

### *Summary*

After a careful balancing of the factors discussed above, and taking into consideration the strong presumption in favor of exercising jurisdiction, this court finds that exceptional circumstances do exist which mandate an exercise of discretion to stay or dismiss the federal action pending resolution of the Georgia state court action. The federal court action has not progressed to the point where it would be unfair, or work an undue hardship on the parties, to dismiss this suit and allow the parties to go forward in the Georgia court, where the action has progressed considerably further. Additionally, the state court action is in Georgia and the dispute is governed largely by Georgia law. Because the issues in both lawsuits are virtually identical, federal interests in judicial economy and consistent results are served by dismissing the federal court action. Most importantly, defendants Hay and Puett, who are not subject to this court's jurisdiction, can be made parties to the state court litigation, thus avoiding piecemeal litigation and enabling the parties to obtain fuller relief. Finally, the reactive nature of the federal suit counsels in favor of granting defendants' motion to dismiss.

### *VI. Conclusion*

Because plaintiffs have sued defendants Hay and Puett merely because they are employees or officers of MBS, and because any connection defendants Hay and Puett had with the complained of fraud occurred outside Virginia, this court lacks jurisdiction over them. The court therefore GRANTS defendants' motion to dismiss the individual defendants under Federal Rule of Civil Procedure 12(b)(2).

As to the corporate defendant, the court concludes that the parallel state court litigation constitutes an adequate, perhaps even a superior, vehicle for the complete and prompt resolution of the issues between the parties. *See Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. at 943. The decision to invoke *Colorado River* "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Id.* Accordingly, the court GRANTS defendant MBS' motion to dismiss.

The Clerk is DIRECTED to send a copy of this Opinion and Final Order to counsel for plaintiffs and to counsel for defendants.

It is so ORDERED.