**BASELINE SPORTS, INC., Plaintiff,**

v.

**THIRD BASE SPORTS d/b/a Peach State Wholesale, Premier Hobby Distribution, LLC, James Grant, and Scott Davis, Defendants.**

**No. 2:04CV461.**

United States District Court,
E.D. Virginia.
Norfolk Division.

Oct. 28, 2004.

Ray Webb King, Esquire, Charles Michael Sims, Esquire, LeClair Ryan PC, Richmond, VA, Counsel for Plaintiff.

Stephen Gerard Test, Esquire, Robert Henry Burger, Esquire, Williams Mullen, Virginia Beach, VA, William Van Hearnburg, Jr., Esquire, Smith Gambrell & Russell LLP, Atlanta, GA, Counsel for Defendants.

## *OPINION AND DISMISSAL ORDER*

REBECCA BEACH SMITH, District Judge.

This case is before the court on a motion to dismiss, or in the alternative, to stay, filed by defendants. For the reasons stated below, the motion to dismiss is GRANTED, and the case is DISMISSED pursuant to the abstention doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

### *I. Factual and Procedural History*

Plaintiff Baseline Sports, Inc. ("Baseline"), is a Virginia corporation with its principal place of business in Norfolk, Virginia. David Barnes ("Barnes") is the president of Baseline, and Gary Roberson ("Roberson") is the vice-president. As of

January, 2004, Baseline sold sports trading cards at wholesale. It purchased large quantities of sports trading cards from manufacturers, and, based on product information provided by manufacturers prior to releasing the cards, Baseline solicited orders from retail customers. Baseline also sold collectible cards such as Pokemon, Yugioh, Magic the Gathering and Star Wars in the same manner. Further, Baseline conducted a third line of business involving the marketing and sale at wholesale of products used to store the trading cards.

Defendant Third Base Sports, d/b/a Peach State Wholesale ("Peach State"), is a Georgia partnership with its principal place of business in Alpharetta, Georgia. Defendants James Grant ("Grant") and Scott Davis ("Davis") are general partners of Peach State and residents of Georgia. Defendant Premier Hobby Distribution, LLC, ("Premier") is a Florida limited liability company which was formed on May 13, 2004, as part of the negotiations that gave rise to this lawsuit. Peach State, like Baseline, is in the business of buying and selling collectible sports trading cards.[1]

In late February or early March 2004, the parties began negotiations to attempt to arrive at an agreement under which Peach State would purchase Baseline's sports trading card business. A letter of intent and memorandum of understanding were executed in early April 2004. Under the agreements therein, three new corporate entities were to be formed: Baseline Sports Trading Card LLC, Professional Hobby Distributors, LLC (later named Premier Hobby Distribution), and Baseline Sales & Marketing, LLC. Baseline Sports Trading Card, LLC, and Professional Hobby Distributors would receive Baseline's

inventory of sports and gaming cards, an assignment of Baseline's sports and gaming card distributorship contracts, and certain software-related support services.

As part of the agreement, Peach State agreed to pay Baseline $750,000, with $250,000 to be paid at closing and the balance to be paid by a promissory note. The promissory note was to be secured by an interest in the inventory of Premier and Baseline Sports Trading Card, LLC, the distributorship contracts, and the ownership interest in Premier and Baseline Sports Trading Card, LLC.

On April 29 or 30, 2004, Peach State tendered approximately $678,000 to Baseline. It is not entirely clear what Peach State received in return. Defendants claim that Peach State received approximately $200,000 worth of sports card inventory, Def.'s Mem. in Supp. of Mot. to Dismiss at 4, but Baseline does not state the value of inventory transferred to Peach State. Baseline claims that Peach State and Premier have misappropriated and are currently using Baseline's customer and vendor lists without compensating Baseline accordingly. Defendants claim that Baseline refused to refund the money already paid even after negotiations broke down. In any event, both parties believe a contract was breached and they deserve damages as a result.

Peach State filed suit against Baseline, Barnes and Roberson in the Superior Court of Forsyth County, Georgia, on July 26, 2004, claiming breach of contract, promissory estoppel, unjust enrichment, and fraud. Baseline filed an answer and counterclaim in the Georgia action on August 25, 2004, claiming unjust enrichment and breach of contract. In the meantime,

---

1. The primary difference between the sports card trading businesses conducted by Peach State and Baseline is that while Baseline placed orders with manufacturers before the products were released, Peach State placed orders after a product's release date. Compl. ¶ 19.

Baseline filed the instant lawsuit against Peach State, Premier, Grant and Davis, on August 2, 2004, claiming unjust enrichment and breach of contract. Defendants herein filed a counterclaim on September 1, 2004, claiming breach of contract, promissory estoppel, unjust enrichment, and fraud. Defendants filed a Motion to Dismiss, or in the Alternative, to Stay, on September 1, 2004. Baseline responded on September 14, 2004. Defendants replied to plaintiff's response on September 17, 2004. A hearing was held on October 22, 2004, and the motion is now ripe for review.

Defendants ask the court to dismiss the lawsuit, or, in the alternative, to stay the case pending resolution of the Georgia action. Defendants point to the fact that this lawsuit is a mirror image of the Georgia action; Baseline makes the same claims in federal court as it did in its Georgia counterclaim, with the exception that it has added Premier, Grant, and Davis as parties in this case. Baseline asks for basically the same relief here as in its Georgia counterclaim; namely, damages "in an amount to be determined at trial but expected to exceed $800,000." [2] Compl. at 12; Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. A, at 13.

## II. Abstention under Colorado River

■■■ While federal courts have a "virtually unflagging obligation" to hear all cases over which they have jurisdiction, in rare and exceptional circumstances they may abstain "for reasons of wise judicial administration." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). To abstain under *Colorado River*, a district court must first determine the existence of parallel proceedings in

state court. Next the court must consider several factors to determine whether "exceptional circumstances" exist to warrant abstention. These factors are: (a) the assumption by either court of jurisdiction over property; (b) the inconvenience of the federal forum; (c) the desirability of avoiding piecemeal litigation; (d) the order in which the courts obtained jurisdiction and the progress achieved in each action; (e) the source of applicable law; and (f) whether the state proceedings will adequately protect the parties' rights. The Supreme Court in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), added consideration of whether the later-filed lawsuit is reactive or vexatious. This court has held that the Fourth Circuit considers this an additional factor under *Colorado River* abstention analysis. *See Holland v. Hay*, 840 F.Supp. 1091, 1102 (E.D.Va.1994)(citing *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934–35 (4th Cir.1992)).

### A. Parallel Proceedings

■■■ Two suits are parallel if "substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991). The parties need not be identical for the suits to be parallel. *Holland*, 840 F.Supp. at 1100. Likewise, the issues need only be substantially similar, not identical. *Id.* at 1099.

■■■ Under the standards set forth by the Fourth Circuit in *New Beckley* and other cases, the proceedings in this case are clearly parallel to those pending in Georgia state court. The facts alleged by Baseline in this case are exactly the same

2. However, Baseline requested that the court order attorney's fees in the Georgia counterclaim, but not in the instant federal suit.

as those alleged in its Georgia counterclaim. The only difference is the addition of Premier, Grant, and Davis as parties, which Baseline states is necessary to afford complete relief.

This court held in *Holland* that federal and state proceedings were parallel even though the state suit contained additional plaintiffs not named in the federal suit. *Holland*, 840 F.Supp. at 1100. As defendants argue, if Premier truly is a necessary party in order for Baseline to receive complete relief, Premier could be added to the Georgia action.[3] Under Georgia Code § 9–11–19, any person who is subject to service of process "shall be joined as a party in the action if (1)[i]n his absence complete relief cannot be afforded among those who are already parties." O.C.G.A. § 9–11–19 (2004). The statute further states that if such a party is not joined, the court shall order that he be made a party. *Id.*

■■ Baseline argues that the Georgia court does not have personal jurisdiction over Premier, and for this reason the federal suit must be allowed to go forward, otherwise Premier cannot be sued. However, under the Georgia long-arm statute, O.C.G.A. § 9–10–91, any business which engages in negotiations within the state is subject to personal jurisdiction in Georgia.

3. There is no question that the Georgia court would have jurisdiction over Grant and Davis, who are both residents of Georgia. Reply Br. in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, to Stay at 2.

4. Plaintiff's own submissions to the court illustrate the close connection between Grant and Davis and Premier. Plaintiff submits a *Memo* dated June 1, 2004, stating that Grant and Davis agree to be "jointly and severally liable for all debts of PHD [Premier]" and to "pay all obligations of PHD in a timely manner." Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, to Stay, Ex. 2. This statement by Baseline illustrates the fact that Baseline knew then, and knows now, that

*See also Allstate Ins. Co. v. Klein*, 262 Ga. 599, 422 S.E.2d 863, 864 (1992). Premier was formed as part of the negotiations between Baseline and Peach State in spring of 2004. The majority owners of Premier, Grant and Davis, live in Georgia. Grant and Davis are also principals of Premier, and therefore are subject to service of process on behalf of the company.[4] Moreover, defendants, including the principals of Premier, concede that Premier is subject to personal jurisdiction in Georgia.[5] Premier, Grant, and Davis can all be made parties to the Georgia action.[6] The Georgia state action and this federal action are parallel proceedings under *Colorado River*.

## B. The "Exceptional Circumstances" Test

■ Under *Colorado River*, the district court must consider several factors in order to determine whether exceptional circumstances exist to justify abstention. These factors will now be addressed and applied to the instant case.

### 1. Jurisdiction over Property

The parties agree that no res or property is involved over which either court has asserted jurisdiction. This factor is thus inapplicable.

Grant and Davis were never arms-length associates of Premier, but rather were and are personally responsible for its debts and obligations, at least in Baseline's opinion.

5. *See* Reply Br. in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, to Stay at 2.

6. It appears to this court that plaintiff does not legitimately question the Georgia court's jurisdiction over Premier, and that plaintiff (as defendants argue) failed to join Premier as a party in order to have a reason to bring this lawsuit. This clearly provides support for defendants' contention that this lawsuit is vexatious and reactive. *See infra* § II.B.7 for further discussion.

### 2. Inconvenience of the Forum

In considering whether the federal or state forum is inconvenient, the court must look at the "relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *see Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236. Defendants argue that this factor weighs in favor of dismissal or a stay because most of the witnesses and records involved in the case are located in Georgia. Defendants note that Grant and Davis are residents of Georgia, and that all the employees of Premier are residents of Florida, which is much closer to Georgia than to Virginia. Furthermore, the primary negotiations took place in Georgia, and performance was to take place there as well. Therefore, Baseline could clearly have expected to be subject to suit in Georgia.

In response, Baseline states that its own corporate offices are located in Virginia, and that a portion of the negotiations took place in Virginia.[7] Baseline makes no other assertion regarding inconvenience. The court concludes that Georgia is the more convenient forum because the records and most of the witnesses involved in this case are in Georgia or Florida. Therefore, this factor weighs in favor of abstention.

### 3. Order in which Jurisdiction was Obtained

The Georgia suit was filed on July 26, 2004. This lawsuit was filed on August 2, 2004. However, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. 927. Defendants argue that discovery has commenced in the Georgia action; specifically, Peach State served Interrogatories and Requests for Production on Baseline in the Georgia action on August 27, 2004. The federal lawsuit has not progressed past the answers to the complaint and counterclaim.

While neither lawsuit has progressed very far, the suit in Georgia has progressed further. This factor weighs slightly in favor of abstention. Moreover, neither party will be significantly burdened by litigating the claim exclusively in Georgia.

### 4. Avoidance of Piecemeal Litigation

This has been deemed the most important of the *Colorado River* factors. *See Holland,* 840 F.Supp. at 1101. The Court in *Colorado River* stated that where there is contemporaneous exercise of concurrent jurisdiction, the court must consider principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). In light of the "virtually unflagging obligation" to exercise jurisdiction, *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236, this court must carefully consider this factor together with the others. The existence of parallel (in fact, nearly identical) state and federal proceedings is wasteful of judicial resources. Although "judicial diseconomy *alone* does not justify abstention," *Gordon v. Luksch,* 887 F.2d 496 (4th Cir.1989) (emphasis added), in this case the judicial diseconomy is the product of a reactive, vexatious lawsuit.[8] Such disregard for judicial time and resources should not, and need not, be tolerated. Furthermore, this duplicative litigation will no doubt present

---

7. Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss at 10.

8. *See infra* § II.B.7.

serious *res judicata* problems for either this court or the Georgia court, depending on which court first reaches the merits of the dispute. *See Beck v. CKD Praha Holding*, 999 F.Supp. 652, 657 (D.Md.1998) (abstaining in the face of parallel proceedings because of *res judicata* concerns). This factor weighs strongly in favor of abstention.[9]

### 5. Presence of a Federal Question

 There is no federal question at issue in this case. Baseline claims that defendants breached a contract and were unjustly enriched. Defendants' counterclaim alleges breach of contract, promissory estoppel, unjust enrichment, and fraud. These claims all arise under state law. The presence of a federal question would strongly encourage the court not to abstain, but the mere absence of a federal question does not bear any weight. *Jackson Hewitt, Inc. v. J2 Fin. Servs., Inc.*, 901 F.Supp. 1061, 1068 (E.D.Va.1995). Therefore, this factor is neutral.

### 6. Adequacy of the State Court Proceedings to Protect Parties' Rights

This factor addresses whether the state court will adequately protect the federal plaintiff's rights and provide full relief. There is no reason why the Georgia court would inadequately protect Baseline's rights. The only reason it cannot provide full relief, according to Baseline, is that Premier, Grant, and Davis are not parties to the Georgia action. As discussed previously,[10] these parties could be joined in that action, either by Baseline itself or by the court. Therefore, this factor does not weigh against abstention.

### 7. Reactive Nature of the Federal Suit

Defendants argue that Baseline filed this lawsuit in reaction to the Georgia suit filed by Peach State a few days earlier. The Supreme Court noted in *Moses H. Cone* that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." *Moses H. Cone*, 460 U.S. at 17, 103 S.Ct. 927 (dictum). The Fourth Circuit has since held in *McLaughlin*, 955 F.2d at 935–36, that, absent a finding of bad faith, the court should "seek to dispose of disputes efficiently and justly" within the jurisdiction given them. However, if the court found bad faith on the part of plaintiff, or if the federal action was filed "in order to sidestep the Georgia court's jurisdiction and reverse the roles of the parties," a stay or dismissal would be warranted "as a means to deter vexatious use of the courts." *Holland*, 840 F.Supp. at 1101.

Baseline stated in its briefs and in argument before the court that it filed this federal lawsuit because it believed the Georgia court could not exercise jurisdiction over Premier. This conclusion is patently wrong. It defies logic for plaintiff to argue that an entity owned by Georgia residents and created during negotiations taking place in Georgia would not be subject to suit in Georgia under that state's long-arm statute.[11] Plaintiff's memoran-

---

**9.** Although the Fourth Circuit held in *Gannett Co., Inc. v. The Clark Constr. Group, Inc.*, 286 F.3d 737, 744 (4th Cir.2002), that the litigation must be "particularly ill-suited for resolution in duplicate forums" in order for abstention to be warranted, that case is distinguishable. *Gannett* did not involve the same egregious waste of judicial resources as does the pending case. The district court in *Gannett* found that the lawsuit was not reac-

tive or vexatious, and the Fourth Circuit affirmed this finding on appeal. *Id.* at 748. This court, to the contrary, finds this federal lawsuit to be reactive, vexatious, and unnecessarily duplicative litigation. *See infra* § II.B.7.

**10.** *See supra* § II.A.

**11.** *See supra* § II.A.

dum cites no legal authority for the contention that the Georgia court does not have personal jurisdiction over Premier.[12] Furthermore, at the hearing on October 22, 2004, plaintiff's counsel was unable to point to any precedent or authority in support of his argument, and, in point of fact, plaintiff has indicated to this court that Grant and Davis, both Georgia residents, are personally responsible for Premier's debts and obligations.[13] Moreover, Premier and its principals concede that they are subject to suit in Georgia.[14] There simply is no legal authority or factual support for plaintiff's argument that the Georgia state court would not have jurisdiction over Premier, and plaintiff has pointed to no other valid reason for the existence of this lawsuit.[15]

Furthermore, if plaintiff wanted so badly to litigate this case in federal court, it could have removed the case under 28 U.S.C. § 1441.[16] The fact that plaintiff chose not to remove the case lends further credence to the conclusion that plaintiff filed this lawsuit for improper purposes. Since the court finds that this lawsuit was filed vexatiously and in reaction to the pending Georgia suit, this factor weighs strongly in favor of abstention.

### III. Conclusion

The reactive and vexatious nature of this lawsuit is by itself an exceptional circumstance which, coupled with the court's finding that the state and federal proceedings are parallel, justifies abstention under *Col-*

*orado River.* Add to the mix the severe waste of judicial resources and the *res judicata* problems that would result from this case being concurrently litigated in two forums, and the argument for abstention becomes even stronger. Moreover, no other factor weighs against abstention, as there is no jurisdiction over property by either court; the state forum is actually more convenient and first obtained jurisdiction; there is no federal question involved in either lawsuit; and the Georgia state court can adequately and properly protect the rights of the parties.

The court therefore concludes that the best course of action is to abstain from hearing this case. Practically speaking, this conclusion means the case must be dismissed. As this court stated in *Holland,* "[t]he decision to invoke *Colorado River* 'necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case.'" *Holland,* 840 F.Supp. at 1102, quoting *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927. There being nothing further for this court to resolve in this matter, defendants' motion to dismiss is GRANTED. The Clerk is DIRECTED to send a copy of this Opinion and Dismissal Order to counsel for both parties.

IT IS SO ORDERED.

---

12. Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, to Stay at 3.

13. *See supra* note 4 and accompanying text.

14. *See supra* note 5 and accompanying text.

15. Plaintiff's counsel argued at the hearing that plaintiff should not have to litigate this case out of state and incur the costs that out-of-state litigation entails. This, by itself, is not a valid reason to file a nearly identical

lawsuit in federal court, and thus it does not negate the inference of bad faith this court draws from plaintiff's actions. *See supra* § II.B.7.

16. Under 28 U.S.C. § 1446, Baseline had 30 days from receipt of the complaint in the Georgia action to remove that case to federal court; since it filed suit in federal court in Virginia only seven days after the Georgia action was filed, the removal deadline had not yet lapsed.